ALICE E. ALSTON *v.* NEWCOMER & KAUSLER.

1. ATTACHMENT : NON-RESIDENT : DOMICIL. — The statute giving the remedy by attachment against a non-resident of the State contemplates actual non-residence without regard to the domicil of the debtor, and was intended to give the remedy against debtors who could not be served with process while their domicil was in the State.   19 Wend. 14; 1 Selden, 423; 19 Maryland, 82.

2. SAME : SAME : SAME. — Mere absence from the State, of a debtor domiciled here, temporarily on business or pleasure, does not make him a non-resident within the meaning of the attachment law; he must have a fixed abode elsewhere, with an intention to remain permanently, at least, for a time, for business or other purposes.   18 Ark. 236.

3. SAME : SAME : SAME. — Domicil and residence are not convertible terms; domicil may be in one place, and the residence for the time being in another.

. ERROR to the Circuit Court of Hinds county.   Hon. John Watts, judge. ·

Defendants in error sued out an attachment against plaintiff in error, on the ground that she was a non-resident of the State of Mississippi.   Plea in abatement traversing the alleged cause.   On this issue jury and verdict for defendants in error. Pleas in bar were then filed, and, on the issues presented, jury and verdict and judgment for defendants in error.   The testimony, on the trial of the issue presented by the plea in abatement, is set forth in the opinion of the court.   Motion for a new trial overruled, and writ of error to this court.

Alice E. Alston *v.* Newcomer & Kausler.

*C. E. Hooker*, for plaintiff in error, argued:—

1. That the constitution of the State provides: "Absence on business of the State, or of the United States, or on a visit, or necessary private business, shall not cause a forfeiture of *citizenship* or *residence* once obtained." Plaintiff in error was certainly a citizen, and resident of the State, previous to 1863. Since then she has been absent as a refugee, from the ravages of war, and for the purpose of educating her children, with the intention of returning to the State. Her temporary absence, under the constitution, does not work a forfeiture of her residence. If a resident, she is not liable to the attachment sued out in this cause.

What length of absence will make a citizen a non-resident? The constitution imposes no limit, provided "the absence be on a visit, or necessary private business."

2. That no temporary absence will justify an attachment. § 39, *Mandell* v. *Peet, Sims & Co.*, 18 Ark. 236; *Fuller* v. *Bryan*, 20 Penn. Rep. 147; *Kingsland* v. *Worsham*, 16 Missouri, 657; *Ellington* v. *Monroe*, 17 ib. 427; *Fitch* v. *Waite*, 5 Conn. 117; *Watson* v. *Pierpont*, 7 Martin, La. 413.

3. That the cases in 1 Wend. 43, and 1 Selden, 422, in New York, relied on by counsel for defendants in error, have been subsequently revised, and substantially reversed. 11 How. Prac. Rep. 507; 9 ib. 272; 6 Abbot's Prac. Rep. 374; 4 Barb. 504.

*Johnston & Johnston* for defendants in error.

The word resident denotes "one who resides or dwells in a place for some time." Residence and domicil are sometimes regarded as convertible terms, but they are not so. 2 Parsons on Cont. p. 578. Domicil is a residence coupled with the intention of remaining. Vattel, 163. It consists of an act and an intent. Residence is a *fact*, independent of the *animus manendi*, or *animus revertendi*. It is to be determined without regard to intent. And if an actual stay at any one place continues such length of time as to acquire the nature of residence, the legal consequences attaching are not to be affected by any

secret animus of the party. A simple inquiry as to the residence of a debtor is purely a question of fact for the determination of a jury, and is not difficult of solution. When complicated with, and classed as dependent upon, the question of domicil, it becomes difficult and embarrassing, not because ofny a great difficulty of determining either separately, but because of the erroneous association and dependence. Domicil and its legal tests are one thing, and residence and its legal tests are another. And, although they often exist together and are essentially illustrative of each other, yet they are as often two distinct things.

The object of the law will explain the whole question. It is intended to give a remedy to creditors where debtors cannot be served with process, and where the absence will effectually bar all other proceedings. And whether the non-residence be voluntary or involuntary, permanent or temporary, the reason for the remedy is the same. 1 Wendell, p. 45.

It is not that every casual absence justifies this proceeding, but where a debtor resides abroad in such a way as to deprive his creditors *for years* from all remedy, then his property is liable to attachment. This law is to be liberally construed for the benefit of creditors. Rev. Code, p. 382, art. 44. As to the distinction between domicil and residence, see *Hairston* v. *Hairston*, 27 Miss. p. 704; 2 Parsons on Cont. p. 580; 6 S. & M. p. 375; Drake on Attachments, § 80; 1 Wendell, N.Y. Rep p. 43; 1 Selden, p. 427; *Frost* v. *Brisbin*, 19 Wendell, p. 14.

In the matter of *Thompson*, 1 Wendell, p. 43, the court held that the point of inquiry was the actual residence, and not the domicil. The defence proceeded upon the idea that the debtor was not liable to attachment because domiciled in New York. But, says the court, no length of residence, with the intention of remaining, constitutes domicil. A debtor, therefore, by residing abroad, without declaring an intention of remaining, might prevent his creditors from ever collecting their debts. The object of the law was to give a remedy when the debtor was beyond the reach of process. The point in this case was the residence of the debtor.

Alice E. Alston v. Newcomer & Kausler.

In case of *Haggart* v. *Morgan*, 1 Selden, p. 427, the attachment was based upon the non-residence of the debtor, under a statute like our own, making this a ground for attachment. The defendant was absent three years in New Orleans, attending a lawsuit, and was held to be a non-resident though domiciled in New York. The preceding case is cited and affirmed. The New York law, like our own, makes *non-residence* ground for attachment. *This case proceeds on this ground.* Drake on Attach., appendix, p. 569.

Residence and domicil being both technical terms, and independent, the use of one by the law precludes the idea that the other is meant.

PEYTON, J., delivered the opinion of the court.

This suit was commenced by attachment, sued out at the instance of Newcomer & Kausler against Alice E. Alston, on the ground that she was a non-resident of this State. The writ of attachment was levied on certain real estate in the city of Jackson, in this State, as the property of the defendant in the attachment, and made returnable to the May Term, 1867, of the Circuit Court of Hinds county for the First District thereof.

At the return term of the said writ of attachment, the defendant therein appeared and filed a plea in abatement, traversing the truth of the alleged cause for which said attachment was sued out.

And at the November Term, 1867, of said court, the issue upon this plea was submitted to a jury, who found that the said attachment was rightfully sued out; whereupon the defendant pleaded in bar of the action the several pleas of non assumpsit, payment, and the Statute of Limitations, upon which issues were joined and submitted to a jury, who found a verdict for the plaintiffs for the sum of $827.25, for which judgment was rendered in favor of the plaintiffs against the defendant.

From this judgment the defendant prosecutes a writ of error to this court.

It is conceded by the counsel for the plaintiff in error that

there is but a single question in this case for the determination of the court, and that is: Was the defendant in the court below a non-resident of the State of Mississippi at the time of suing out the attachment? And for the purpose of ascertaining this fact we will advert to that portion of the testimony which bears most directly upon this point.

G. H. Sheldon, a witness for the plaintiffs below, residing at Havana, in Hale county, in the State of Alabama, testified that he had known the defendant, Alice E. Alston, about nineteen years; that, as postmaster at Havana, he had mailed letters to her at Jackson, Mississippi, for several years prior to 1864; since that time, or about that time, she has been addressed by letters at different points in Sumter, Greene, and Hale counties, in the State of Alabama, and supposes she was residing at the points where her letters were addressed; and that she has remained in that State ever since, with, perhaps, an occasional absence; that she has resided, since she came to Alabama, at different points in Greene, Sumter, and Hale counties, and for the last twelve months in this vicinity, within the county of Hale.

R. B. Allen, a witness residing in the State of Alabama, testified on the part of the plaintiffs below that the children of Mrs. Alston were with her in the State of Alabama, and were going to school most of the time.

Newcomer, on the part of the plaintiffs, testified that the defendant, Mrs. Alston, left the city of Jackson, Mississippi, in the month of May, 1863, and went to the State of Alabama, taking her family, consisting of three children, with her; witness at the time lived in Jackson; that a day or two after Mrs. Alston left, Mrs. Martin moved into Mrs. Alston's house, and occupied it as a tenant. None of Mrs. Alston's servants were left on the premises, which have been occupied by different persons as tenants ever since. That in the month of December, 1866, she came to Jackson on a visit, when she said to witness that she had not returned to Jackson to live; that she intended to remain in Alabama for the purpose of educating her children, and would remain there until they were educated; she stated that

there were good schools in the neighborhood of her mother in Alabama, where she had been residing; she did not say how long she expected to remain in Alabama, but said she intended to remain there and educate her children.

William Yerger, jr., testified that about the 21st of December, 1866, he met Mrs. Alston in Jackson, who then stated to him that she had not returned to Jackson to live, but was only on a visit, and said nothing of any intention to return to Jackson at any future time.

Joshua Green testified that the defendant, Mrs. Alston, left the city of Jackson on the 14th of May, 1863, for Alabama, taking her entire family with her, and, with the exception of occasional visits to Jackson, she has been absent from this State since that time, and is still in Alabama; heard her often say that she intended returning to Jackson to live, but never heard her intimate any time when she would return.

O. Sullivan testified, on the part of the defendant below, that in January, 1865, she employed him to paint, varnish, and repair her furniture, and asked him as to the price of furniture in Jackson, and what he thought it would command in the market. He told her it would not bring its value, and advised her not to sell it. She then instructed him to fix the furniture, and leave some of it at several designated places, and retain the balance in his shop for her; that she would use it when she came back to occupy her house.

From this evidence it appears that the plaintiff in error had not relinquished the idea of returning, at some indefinite future period, to her house in Jackson to live, which she seems to have regarded as her domicil; and it is equally clear that she had a residence in the State of Alabama, of an indefinite duration, for the purpose of educating her children, with the *animo revertendi*, the intention of returning, when that purpose was effected.

The Code, in giving the remedy by attachment, where the party is a *non-resident* of the State, has furnished no specific definition of the sense in which it uses this form of expression. What is really meant by the term non-resident is left in a pain-

ful state of uncertainty. But, keeping in view the object and purpose of the statute, and guided by the liberal rule of construction prescribed by art. 44 of the Rev. Code, 382, we think the attachment was not improperly sued out in this case.

It is insisted by counsel for the plaintiff in error, that residence and domicil mean the same thing, are convertible terms, and that no person can properly be said to be a non-resident of this State whose domicil is within it, although he may actually reside for the time being in another State. This is believed to be an incorrect view of the subject, not warranted by the rule of construction as above indicated by the statute. A person may be a non-resident of the State, within the meaning of the statute relative to non-resident debtors, whilst his domicil of succession continues within the State. Actual residence, without regard to the domicil of the debtor, is what is contemplated by the statute. It was intended to give a remedy to creditors whose debtors could not be served with process while their domicil continued in the State. *Foster* v. *Brisbin,* 19 Wend. 14; *Haggart* v. *Morgan,* 1 Selden, 423; *Riswick* v. *Davis,* 19 Maryland, 82.

Absence from one's domicil may be prolonged to such an extent as to justify his being subjected to attachment as a non-resident; but in such case there must be a settled, fixed abode, an intention to remain permanently, at least for a time, for business or other purposes, to constitute a residence within the meaning of that term. Mere absence from the State, temporarily, on business or pleasure, is not within the meaning of the statute. Drake on Attachment, § 57; *Mandell* v. *Peet, Sims, & Co.,* 18 Ark. 236.

Any person may have his domicil in one place and his residence, for the time being, in another. Domicil and residence are not convertible terms. Thus, a citizen of Mississippi may retain his dwelling here, with its furniture undisturbed, in charge of his neighbor or some friend, for a year or more, while he is educating his children in another, and occupying a hired house there, for that purpose. In such case, it is obvious that

Mississippi continues to be the place of his domicil; and it is equally clear that he becomes, notwithstanding, a temporary resident of the other State where he is educating his children. Of what consequence, looking to the object of the law, is it to the creditor that his debtor has a domicil in this State, if he himself remains for years, perhaps, out of its jurisdiction, residing, actually and personally, in another State, and upon whom process cannot be served in any of the modes prescribed by statute.

But this reason, it may be said, would apply equally to the case of a debtor merely travelling abroad. A man, so far as this law is concerned, may travel without apprehension, but the moment he ceases to sustain the character of a traveller, and, for purposes of education or business, takes up a fixed, though temporary abode, he becomes, for the time being, a resident abroad, and, as a consequence, for the time being, in the eye of the law, a non-resident of the State, and liable, as such non-resident, to have his property, which he has left behind him, attached for the payment of his debts.

There is nothing unreasonable in this rule. On the contrary, while extending all due indulgence to the love of travel, it shows no more than a proper regard for the claims of domestic justice.

We have thus arrived at the conclusion, that the plaintiff in error, at the time of suing out the attachment, was at least a temporary resident of the State of Alabama, for an indefinite period, and consequently, for the time being, a non-resident of this State, within the intent and meaning of our attachment law, and her property within the State was therefore liable to the attachment.

The judgment will be affirmed.

A petition for a re-argument was presented, and a re-argument refused.