## THOMAS MORGAN *v.* ROBERT NUNES ET AL.

1. ATTACHMENT. *Code* 1871, § 1420. *Distinction between residence and domicile.*

    The attachment law contemplates a distinction between domicile and residence, in that the domicile of a citizen may be in one State, and his residence in another, although they are generally at the same place.

2. SAME. *Residence. Definition.*

    Residence implies an established abode, fixed permanently for a time, for business or other purposes, although there may be an intent in the future, at some time or other, to return to the original domicile, a prominent idea involved being whether the absence of the party is of such character and so prolonged that he cannot be served with ordinary process.

3. SAME. *Plea in abatement. Admission. Effect thereof.*

    If, in suing out a writ of attachment, the plaintiff's agent may have acted on the statement of the defendant that he is a non-resident, although the preponderance of evidence is that he is a resident of this State, a verdict for the plaintiff upon issue joined on the plea in abatement of the attachment, traversing the allegation of non-residence in the affidavit, will not be disturbed. *Cocke* v. *Kuykendall,* 41 Miss. 65, cited.

4. PARTNERS. *Suit at law against copartner. Rule and exceptions.*

    While the general rule is that one partner cannot sue his copartner at law, as respects the joint business, yet such action will lie on a covenant or promise to pay a sum of money, to advance a certain sum to carry on the joint adventure, to refund a certain sum so advanced, or for the breach or non-performance of a stipulation in the partnership articles.

ERROR to the Circuit Court of Jackson County.

Hon. G. C. CHANDLER, Judge.

This action, in the name of Robert Nunes and Ralph Nunes, partners under the style of the Nunes Brothers, against Thomas Morgan, begun by an attachment sued out on Feb. 14, 1876, by Edwin C. Lysle, agent and attorney in fact of the plaintiffs, on affidavit by said Lysle that the defendant was a non-resident of this State, was based on the following instrument: —

"NUNES BROS.
                "LOWER CHURCH STREET,
                  "KINGSTON, JAMAICA.
"Messrs. NUNES BROS.,              KINGSTON, Aug. 26, 1875.
    "GENTLEMEN,—I hereby acknowledge the cost of the cargo of
fruit on board the Thomas Winans to be three hundred and forty-
two pounds eighteen shillings and threepence (£342 18s. 3d.), in-
cluding wharfage, &c., one-half of which sum I am liable to you
for, and bind myself accordingly. In the event of a gain on the
shipment, I am to share one-half profits, and you to retain the other
half, first deducting the above amount of £342 18s. 3d. due you.
In like manner, should there be a loss, I am to make good one-half
of such loss to you or your agents.
    "It is understood that the cargo is to be taken freight free, no
charge to be made by me for carrying same; your £342 18s. 3d. to
be deducted before any division of profits.
                          "Your obedt. servant,
                                "THOMAS MORGAN."

On an issue raised by plea in abatement traversing the affi-
davit for the attachment, a jury found the attachment right-
fully sued out. The defendant pleaded to the declaration that
the plaintiffs and defendant were partners in the fruit adven-
ture, and that the court had not jurisdiction of the case; to
which the plaintiffs replied that they sued to recover money
loaned the defendant as an advance in his share of the part-
nership capital.

On the trial, when the plaintiffs offered the written instru-
ment on which the suit was based in evidence, the defendant
objected, on the ground that it showed a partnership, and one
partner could not sue another at law. The objection was
overruled, and the paper admitted.

There was a verdict and judgment for the plaintiffs for $750,
and the defendant sued out this writ of error.

*Hemingway & Harris*, and *Harris & George*, for the plaintiff
in error.

1. The issue on the plea in abatement, as to whether the
defendant was a non-resident, was erroneously decided on the
evidence. Drake on Attachment, §§ 61, 62; *Haggart* v. *Mor-
gan*, 1 Selden, 422; *Frost* v. *Brisbin*, 19 Wend. 11; 2 Kent
Com. 431.

2. The plaintiffs could not sue their copartner at law about the partnership business. Story on Partnership, § 23.

*Raphael Semmes*, for the defendants in error.

*A. H. Handy*, on the same side.

1. The attachment was sued out on the faith of the defendant's admission that he was a non-resident. Story Confl. Laws, §§ 46, 47; *Hairston* v. *Hairston*, 27 Miss. 704, 719; *Cocke* v. *Kuykendall*, 41 Miss. 65.

2. The verdict was right on the evidence. The suit was for the defendant's part of the cost of the cargo and wharfage, for which he had given his formal written promise.

SIMRALL, C. J., delivered the opinion of the court.

The case was tried in the Circuit Court, on the issue in abatement traversing the grounds of the attachment, and also on the merits.

Whether Morgan, the plaintiff in error, was, at the time of suing out the attachment, a " non-resident " of this State within the purview of the attachment law, was the question chiefly litigated in the Circuit Court, and discussed by counsel on this writ of error. The statute does not attempt to define the circumstances that will entitle the creditor to attach on that ground. It has been said that every person has, in law, a domicile or home, and that the original domicile can only be lost by the acquisition of another. *Crawford* v. *Wilson*, 4 Barb. 504; *Brewer* v. *Linnaeus*, 36 Me. 428. It is acquired by act and intention. The intention gives character and effect to the act; as where a new abode is taken up, with intention to abandon the old one. The civil law defines domicile to be the place where the domestic hearth has been established, from which the resident does not depart, except for a temporary purpose and *animo revertendi*. But in the contemplation of the attachment law there is, or may be, a marked distinction between domicile and residence.

It was appropriately said, in *Frost* v. *Brisbin*, 19 Wend. 11, 14, that the domicile of a citizen may be in one State, and his residence in another. They generally, however, are at the same place. Residence implies an established abode, fixed permanently for a time, for business or other purposes; although

there may be an intent, in the future, at some time or other, to return to the original domicile.

The New York statute, declaring that the estate " of every debtor *who resides out of* this State " " shall be liable to be attached," was construed in *Thompson's Case*, 1 Wend. 43, where the court said that the question was, where was the actual residence not the domicile ; that where the debtor's citizenship might be did not affect the question, for no length of residence, without the intention of remaining, constituted *domicile ;* and yet that a debtor might reside abroad so long, without such a declaration of intention, as to defeat his creditors, unless his property was made amenable.

A prominent idea involved is, whether the absence of the party is of such character and so prolonged that he cannot be served with ordinary process. Mere absence will not suffice : the debtor must have acquired a fixed residence, though it may not have been intended to be permanent ; the *animus revertendi* need not be abandoned. *McKiernan* v. *Massingill*, 6 S. & M. 375 ; *Alston* v. *Newcomer*, 42 Miss. 186, 192.

We will refer to the circumstances of some of the cases, to fix in the mind more definitely what constitutes non-residence. In *McCollem* v. *White*, 23 Ind. 43, the debtor left his family and home, without stating where he was going ; he caused it to be known that he was in Nevada ; there was nothing showing that he intended to return. It was held that the jury rightly found that the attachment lay against him as a non-resident. In *Nailor* v. *French*, 4 Yeates, 241, the debtor had resided as a trader many years in Philadelphia, and then sailed as supercargo to the West Indies, carrying with him much the larger part of his property ; and there engaged in business, but was silent about returning ; but, when he sailed, he expressed an intention to return in twelve or eighteen months. The foreign attachment was held to have been well brought. In the case last cited, and in those of *Farrow* v. *Barker*, 3 B. Mon. 217, and *Wells* v. *People*, 44 Ill. 40, the debtors' families remained at their old domiciles ; and that was not in any of the cases considered a controlling circumstance.

To apply these principles to the testimony : Morgan was a ship-master, and sailed in his schooner from New York in 1870 ;

and has since that time been engaged in the lumber trade, from ports on the Mississippi Sound. His family remained in New York; he has frequently sent money to them, and has often written to them to come out to Pascagoula. He told the witness Lysle, agent for the plaintiffs, that he resided in New York; this was in 1875. On cross-examination, Lysle said that he only knew from what Morgan stated that his residence was in New York on the day of suing out the writ of attachment. Morgan testified that he came to Pascagoula, in 1872, to reside permanently, and considered that place his home; and that he registered and voted in the county two years before the trial. One witness saw Morgan register and vote. Two others say that Morgan resides at Pascagoula, and has claimed it as his home since 1872. One of them states that the defendant was at that time interested with him in business. All the witnesses say that he did not keep house, and was only in the county when his vessel was in port; and that at such times he boarded sometimes at Scranton, and sometimes at Pascagoula. The preponderance of the evidence is that Morgan was a resident of this State: but the jury may have predicated their verdict on his statement to Lysle, the plaintiffs' agent for the collection of the debt, that he resided in New York; believing that the agent, who represented a non-resident creditor, was influenced in taking out the attachment by the defendant's statement to him.

It would be difficult to say, aside from Morgan's exercising the rights of citizenship, that he had acquired a residence in Jackson County. It does not appear that his registration and voting were known to the plaintiffs' agent. If, in suing out the writ, he acted on the statement of Morgan, and the jury so believed, the case comes within the principle of *Cocke* v. *Kuykendall*, 41 Miss. 65, and the verdict should be upheld.

Was a proper result reached at the trial on the merits? The general rule is, as pressed by counsel, that one partner cannot sue his copartner at law, as respects the joint business. But where the action is founded on a covenant or promise to pay a sum of money, or to do some act for the purpose of launching the partnership, the action will lie; and so, also, for non-performance of one of the stipulations in the articles. Gow on

Partnership, Bk. II. c. 3, § 245. . The same rule applies if the obligation is to advance one-half, or a certain sum, to carry on the joint adventure, or to refund a certain sum thus advanced. *Williams* v. *Henshaw*, 11 Pick. 79, 83. In *Terrill* v. *Richards*, 1 Nott & M'Cord, 20, the action was sustained on the covenant of the intestate to furnish $4,000, as the capital of the partnership, for the purchase and sale of lands ; the profits of the business to be shared between the parties.

Morgan was sued on his written promise to pay one-half of £342 18s. 3d. This sum was his portion of the cost of the cargo of tropical fruit, which was the subject of the joint adventure, and which he engaged absolutely to pay. The case falls within the rule laid down by the authorities cited, and was fairly presented to the jury.

*Judgment affirmed.*