The opinion of the Court was delivered by
Fenner, J.
The defendant, after several years’ business with the plaintiffs as his commission merchants, quit them ill 1880, owing them a considerable balance. After repeated efforts to get a settlement, plaintiffs sent their agent, Worms, to see him. He refused to make any settlement of any kind, even to give his unsecured notes.
Worms says -. “ I then told him if he. did not do something to satisfy the firm, they would briug suit immediately. He then told me as follows : ‘I give you fair warning that I have my matters fised — cut and dried — by which I can cover myself at a moment’s notice. I hope you will not put me to this necessity, but if you bring suit I will be, bound to protect myself. I have a family, and I am not going to be turned out of doors by any one. I have always tried to do business in an honorable way; but if I am forced to do it, I am going to look out for myself.’ He told me that he would be down in the city during the following week to see wliat could be done. I told him I would submit what had been said to my firm. He said be had consulted his attorneys and was well posted. He said lie had other creditors, and the moment suit was brought, he would notify them all. lie said he owed Flyman & Lichtenstein for advances this year. He owed other accounts for goods bought, which he bad to pay in order to keep u}) his credit. After paying these parties, if I have any means at nay command, I will pay you all I can. I communicated with my firm after this, and consulted-counsel. The result was this suit.”
Upon the report by Worms to plaintiffs of these statements of their debtor, t-liey brought suit against him and attached liis property, upon the allegation that “Ivrai-m is about to mortgage, assign or dispose of bis property, rights and credits, or some part thereof, witli intent to defraud his creditors, or give an unfair preference to some of them.” Taking the testimony of Worms as true, we think the statements, beyond doubt, afforded sufficient and incontrovertible ground for the attachment, under Art. 243, C. P.
What a man has done is a matter of fact; what he is about to do is a question of intention. . ■ .
*912 We can only ascertain the intention of another mind by inference or deduction from acts or words, and words declaratory of intention are, in tlie nature of things, the best evidence of the existence of such intention.
Attachment is unavailing against accomplished dispositions of property, even fraudulent, unless they are mere simulations. The object of this provision of the attachment law is to prevent the accomplishment of fraudulent intentions.
It is useless to criticise these statements of Kraim, as reported by Worms. Language, more distinctly declaratory of the very intention which the law prescribes as the foundation for attachment, could not be devised.
. We read with astonishment the statement in defendant’s brief that this-Court had decided, in 22 An. 531, that, though a defendant “had said and boasted that he would fix his things so they (the plaintiffs) could never recover , anything,” yet this would furnish no ground for attachment. A reference to the case shows that there was no such eZioium. The Court, indeed, quotes the above statement as having been made in plaintiffs’ affidavit, but does not say that it was proven. On the contrary, the attachment was dissolved because the evidence satisfied the Court that “there was no disposition, or intended, disposition, on the part of defendant, with the view of defrauding his creditors.”
But it is said the intention declared by Kraim was only a conditional one — conditional on plaintiffs bringing suit. True, but this condition being dependent on the will of plaintiff's, in the exercise of an unquestioned right, that condition being accomplished by the determination to sue, the declared intention became thereby a-ctnal and positive.
The evidence satisfies us that the statement of Worms is substantially true. It is contradicted by nobody but- Kraim, whose direct -interest renders his credibility inferior to that of Worms, and whose own statement is a very lame and unsatisfactory explanation of bis conversation with Worms.
Indeed, Kraim’s own statement of what he said to Worms, involves a distinct threat that, if sued, he would cause his property to he taken, or covered up, in satisfaction of a pretended claim or judgment of his wife against him, which tlie evidence shows had-no existence.
- Moreover, on one point, in which they conflict, to-wit: the refusal of Kraim to give his notes, Worms is corroborated by another witness ; and, indeed, his whole version is in harmony with prior statements of Kraim to Newman.
The representations of Kraim justified the attachment; and, while he was at liberty to dispute the fact tha.t he made them, yet, that fact having been established, ho was clearly estopped from denying the *913 truth of his own representations, tlie most common example of estopx>el enpais being “that by which a party is estopped to deny the truth of representations made to, and acted upon, by another.” Bigelow, Est. p. 473.
In the language of the Supreme Court of Mississippi, in an attachment case: “ The affidavit was founded on facts fully justifying it, derived from the defendant himself. It does not lie in his mouth to say that his statements, made to the x>laintiff and ux>on the truth of which plaintiff relied and had a right to rely, were all false, and, therefore, plaintiff’s attachment was wrongfully sued out.” Cocke vs. Kuykendall, 41 Miss. 65; Morgan vs. Nunes, 54 Miss. 308; Drake on Attachment, Sec. 75.
It follows that the dissolution of the attachment and the allowance of damages for its wrongful issuance, were erroneous.
We think the claim of plaintiffs, in addition to the deduction made in the judgment, should be further reduced by reduction of the interest charged from 8 x>er cent, to the legal rate, and by rejecting the commission .charged for advances. According to the calculations made in defendant’s brief, which seem to be correct, these excessive charges amount to $665.98.
It is, therefore, ordered, adjudged and decreed, that the judgment apx>ealed from be reversed, in.so far as it decrees the dissolution of the attachment at the cost of xdaintiffs, and in so far as it condemns plaintiffs to pay damages, and that the said judgment, in so far as it is in favor of xdaintiffs and against tlie defendant, be amended by reducing the same by the amount of six hundred and sixty-five 98-100 dollars, and further amended by allowing plaintiffs a privilege on-the property attached, and that, as so amended, the said judgment of plaintiffs ag’ainst the defendant be affirmed, the costs in both Courts to be paid by defendant and appellant.
Rehearing refused.