627 So.2d 313 (1993)
STATE TAX COMMISSION of the State of Mississippi
v.
Walter C. EARNEST, Jr. and Helen J. Earnest.
No. 92-CC-0726.
Supreme Court of Mississippi.
September 23, 1993.
Rehearing Denied December 16, 1993.
*314 Bobby R. Long, Jackson, for appellant.
B.G. Perry, Ronald Louis Taylor, Taylor Jones Alexander Sorrell & McFall, Southaven, B.G. Perry, Southaven, for appellees.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
SMITH, Justice, for the Court:
This is an appeal by the Mississippi State Tax Commission from the decision of the DeSoto County Chancery Court reversing the decision of the Commission in assessing $172,529.46 against Walter C. and Helen J. Earnest for failure to pay personal state income taxes for the years 1980 through 1988.
The Earnests contend that they were residents and domiciliaries of Tennessee for state income tax purposes during the period. It is uncontested that they were residents of Mississippi immediately prior to 1980. It is also clear that the Earnests have maintained a residence in Memphis, Tennessee, since 1980 and that Mr. Earnest owned a business there. Tennessee does not have a personal income tax.
In determining that the Earnests owed taxes for the years 1980 to 1988, the Commission looked at the Earnests' continuing ties to Mississippi. One or both of them exercised the right to vote in Mississippi in 1980, 1983, 1984, 1985, 1987, 1988, and 1989. Neither of them ever registered to vote in Tennessee. The Earnests claimed homestead exemption in Mississippi for the years 1982, 1983 and 1984. The Earnests each had a Mississippi driver's license throughout the period and had vehicles registered in both Mississippi and Tennessee. In 1983 when the Earnests established a Ford dealership in Olive Branch, Mississippi, they represented to Ford that they were residents of Mississippi. Ford would not have granted the Earnests the dealership unless they were Mississippi residents.
The Earnests owned a farm in Chickasaw County, a horse farm in DeSoto County, and a cattle farm in Panola County. Each of these properties had a house where the Earnests could stay. In fact, the Earnests built a new home on Nail Road in Olive Branch in 1981, and this is the property on which they claimed homestead exemption until their tax attorney advised them to stop. During the years in question the Earnests rented an apartment and later leased a house while living in Memphis.
The Commission, in determining that taxes were due, relied on a tax regulation providing that an individual remains a legal resident of Mississippi "until such time as such individual takes positive action to establish legal residence in some other state or country and relinquishes his rights and privileges of residency in Mississippi." The chancellor found that the Commission's decision was arbitrary and capricious and reversed the decision of the Commission except for the period in 1980 prior to the Earnest's moving to Memphis.
On appeal the State Tax Commission raises the following three issues:
1. Whether Walter C. Earnest, Jr. and his wife, Helen J. Earnest maintained their Mississippi domicile during the period 1980 *315 through 1988 for Mississippi income tax purposes.
2. Whether Miss. Code Ann. § 27-7-3(e) (1972) in defining "Resident" for state income tax purposes draws a legal distinction between domicile and legal or actual residence, and if so, whether the taxpayers in this case had a legal or actual residence in the state of Mississippi for the period 1980 through 1988.
3. Whether the lower court properly applied the standard of review for reviewing a decision of the Mississippi State Tax Commission.
Based on the substantial evidence that the Earnests acted inconsistently with establishing legal residence other than in Mississippi, the chancellor was clearly in error. The Earnests took advantage of Mississippi citizenship  voting, driver's license, license plates, property tax exemption  without any corresponding action in Tennessee. A finding that the Commission's decision was arbitrary and capricious cannot be explained or justified. While the lower court or this Court may have reached a different conclusion from the facts, there was no basis for reversal of the Commission considering the standard of review the Chancellor is required to employ. This case will be reversed and the decision of the Commission reinstated and rendered.

FACTS
Walter C. Earnest and Helen J. Earnest were both born and raised in Mississippi. Mr. Earnest was from Chickasaw County on Sandy Lane Road between Egypt and Buena Vista on Chaqatonchee Bottom. Mrs. Earnest was born and raised in the northwest corner of Chickasaw County. In 1953, the day after receiving his high school diploma, Mr. Earnest headed north to Memphis, Tennessee. Mrs. Earnest moved there in 1955. They met, married in 1956, and continued to live in Tennessee. They moved back to Mississippi in 1964 and lived in Southaven until 1980.
Mr. Earnest was in the business of freight consolidation and he and partners started Manufacturer's Consolidation Services in Memphis. Mr. Earnest bought out two of the partners and he and W.C. Shadrock, Jr. continued the business as equal partners. Problems developed between the partners, and as a result, Mr. Earnest felt the need to devote more time to work. Ultimately, Mr. Earnest sold out his interest in the business in 1988.
Partially because of health problems and partially because of business problems, Mr. Earnest made the decision to move to Memphis in 1980. He was no longer able to keep up the house and yard in Southaven. Mr. Earnest had polio when he was sixteen. He had an enlarged heart, high blood pressure, diabetes, gout, phlebitis, kidney problems, back problems and arthritis. Two of the Earnests' three daughters were no longer at home at the time, so the Earnests moved all their furniture and personal effects from Southaven to an apartment they rented in Memphis.
Although Mr. Earnest did not drive much after the mid 1970's, he continued to renew his Mississippi driver's license after he moved to Tennessee. He would travel to Hernando and have his picture made and pay the fee. At the time of the trial he no longer had a Mississippi license. He surrendered his Mississippi license in 1989 when he got a Tennessee license.
Mrs. Earnest first got a Tennessee driver's license in 1985 or 1986. She also kept renewing her Mississippi driver's license and had two licenses. She did not know where her Mississippi license was or if it had expired at the time of the trial.
The Earnests owned several properties in Mississippi. There was a quarterhorse farm at 4134 Nail Road East in Olive Branch, known as the Rocking E Farms. It was on this property that the Earnests built a new home in 1981. The house was a three bedroom, two and one half bath brick structure with around 2,000 square feet. In addition to this house on the property there was also a double-wide trailer where the Earnests' oldest daughter, son-in-law, and three grandchildren lived, a wooden barn 120 feet long, and a 80 by 100 metal barn with an indoor riding arena.
*316 The Earnests apparently spent time on the farm because of the horses and their daughter and her family. Mrs. Earnest testified, "Walter cannot go two days without seeing those grand kids."
Mrs. Earnest testified that she filed the homestead exemption on the Nail Road property. She explained: "I had been signing up for it for years, 16, 17 years, and I just kept signing up for it. I just did not know that there was any  any problem with it and Neal [Labovitz] came across my papers when we were doing our taxes in '84 and he said, `Are you signing for Homestead Exemption?' I said, `I am.' He said, `You cannot do that and live in the State of Tennessee.' And I assumed that since I had property here I was  I could  I could sign for it."
The Earnests also own a farm near Okolona where they raised cattle and soybeans. There is also a 1,600 acre farm in Como, Mississippi. Each farm had a house where the Earnests stayed. Every farm truck purchased was registered in Mississippi.
In the early 1980's, Mr. Earnest was involved in a Ford dealership in Olive Branch. His son-in-law operated it for three or four years until he developed ulcers, and the business was sold. In the application for the dealership, Mr. Earnest used the farm address, 4134 Nail Road East, Olive Branch, MS. He testified that Ford required a Mississippi address. Mrs. Earnest was furnished a car from the dealership with a Mississippi dealer's license plate.
Mr. Earnest testified that he voted in DeSoto County in the elections in 1980 and 1984. He went to vote in 1988 but tore up the ballot when he found that in the primary he would have to vote Republican or Democrat. He never voted in any state other than Mississippi and never registered to vote in Tennessee.
Mrs. Earnest also testified that she had never registered to vote anywhere but Mississippi and had voted in the 1980 and 1984 presidential elections and in local elections in DeSoto County.
Mr. Earnest testified that when he moved to Tennessee in 1980 he intended that to be his permanent home. Mrs. Earnest testified that she also intended the move to be permanent. She said that after moving to Memphis they discussed the change of residence with Neal Labovitz.
From 1980 on, the Earnests filed federal income tax returns using their Memphis address. The returns were prepared by Neal Labovitz. Labovitz is an attorney licensed in Mississippi and Tennessee specializing in tax and administrative law. Labovitz testified that "from the very beginning, every year, when we did the tax return, as I was taught from the beginning, you determine domicile, and what their intent of domicile was, because intent tended to be more important from my understanding of the Federal laws, than anything else." He said that they determined domicile to be Tennessee and each year there was a verbal reaffirmation of where they were living. Labovitz did not consider than there was anything necessary other than intent. It was his opinion that the Mississippi tax regulations did not apply although it is unclear whether he consulted them.
Testifying for the Tax Commission was Mike Shelby, an auditor with the Commission who was assigned the Earnests' case. He began an investigation of them in May 1988 based on what he understood to be information from an informant. After some difficulty in getting a response from the Earnests, he made a determination of tax liability for the years 1980 through 1988. His assessment was appealed to the Board of Review of the Tax Commission. The Board of Review waived the penalty and affirmed the remainder of the assessment as did the Full Commission when it was appealed there.
Shelby testified that he checked homestead exemption, driver's license, auto registration and voter registration. He determined that homestead had been filed on the Nail Road address in 1982, 1983, and 1984. He determined that each had a valid Mississippi driver's license for the period 1979 through 1987. He determined that they had several vehicles registered and titled in Mississippi. He determined that there was electrical service to the Nail Road address.
*317 As to the voting record of the Earnests, Shelby testified:
In 1979, they both voted; in 1980 they both voted; in 1981 and 1982 I was unable to locate the poll record. I nor the county workers could locate it. In 1983 they both voted; in 1984 they both voted; in 1985 they both voted; in 1986 the June election they did not vote. In 1987 they both voted and in 1988 Mr. Earnest voted, she did not. That was in the Democratic Primary.
Shelby was extensively cross-examined on whether anyone from the Commission had ever visited either the Nail Road or Memphis or other addresses of the Earnests. Shelby testified that he was personally unaware of such a visit.

DISCUSSION
At issue is whether the Earnests are residents of Mississippi for purposes of state personal income tax for the years 1980 to 1988.
Miss. Code Ann. § 27-7-3(e) (1991) states:
"Resident" means a natural person and includes, for the purpose of determining liability for the tax imposed by this article upon or with reference to the income of any taxable year, any person domiciled in the State of Mississippi and any other person who maintains a legal or actual residence within the state.
The Tax Commission in a separate regulation has defined domicile and residence for state income tax purposes. Miss. Income Tax Reg. No. 1.27-7-3(5)(b) and (c) provides as follows:
(b) Domicile defined. Domicile is the place where an individual lives and has his permanent home and principal establishment and to which he has the intention of returning whenever he is absent. Actual residence may or may not necessarily mean domicile, or domicile is the fixed place of abode which in the intention of the taxpayer is permanent rather than transitory. It is the place in which an individual has voluntarily fixed the habitation of himself and his family, not for a mere special or limited purpose, but with the present intention of making a permanent home, until some unexpected event shall occur to induce him to adopt some other permanent home. A domicile once established continues until a new domicile is established through the intent and purpose of establishing, and the actual establishment, of a new domicile coupled with the abandonment of the old. Every person has one and only one domicile. What constitutes domicile is a question of fact rather than of law, frequently depending on a variety of circumstances. The Commissioner may require of an individual claiming domicile outside the State of Mississippi a statement of information with respect to the particular case.
(c) Legal resident defined. An individual who maintains a home, apartment or other place of abode in Mississippi, or who exercises the rights of citizenship in Mississippi by meeting the requirements as a voter, or who enjoys the benefits of homestead exemption, or who otherwise exercises his right or privileges of suffrage in this state, is a legal resident of the State of Mississippi and remains a resident although temporarily absent from the state for varying intervals of time. A person may, therefore, be domiciled without Mississippi and still be a legal resident of Mississippi for tax purposes. If an individual establishes the status of a legal resident of Mississippi, he retains that status until such time as such individual takes positive action to establish legal residence in some other state or country and relinquishes his rights and privileges of residency in Mississippi.
The first two assignments of error explore whether the Earnests are under either domiciliaries or residents for purposes of the tax laws.
WERE THE EARNESTS DOMICILED IN MISSISSIPPI FROM 1980 TO 1988?
There is no dispute that prior to 1980 the Earnests were domiciled in Mississippi. They neither owned nor leased any place to live outside Mississippi. Their testimony supports this conclusion.
The testimony is that upon moving to the apartment in Memphis in 1980 it was *318 their intent to make this their permanent home. This intent was communicated to their tax attorney and is supported by testimony from friends and family as to what Mr. and Mrs. Earnest intended.
The regulation defining "domicile" clearly supports the position that when the Earnests left Southaven they changed domiciles. The words "intention" and "intent" are the pivotal characteristics of domicile and changing domicile.
In Stubbs v. Stubbs, 211 So.2d 821, 825 (Miss. 1968) this Court stated:
The foundation of domicile is intent. This intention may be established by physical presence, declaration of intent, and all relevant facts and circumstances, and in this connection it has been held that the declarations of the party himself are most important.
In Smith v. Deere, 195 Miss. 502, 505, 16 So.2d 33, 34 (1943) this Court looked at other definitions of domicile:
In Hairston v. Hairston, 27 Miss. 704, 61 Am.Dec. 500, the court quoted with approval Judge Story's definition of the word "domicile" as follows: "`That is properly the domicile of a person where he has his true, fixed, permanent home and principal establishment, and to which whenever he is absent, he has the intention of returning.' Confl. Laws, p. 39, sec. 41. This is perhaps the most comprehensive and correct definition of the term which could be given." 28 C.J.S., Domicile, pp. 30-32, sec. 13, states the rule thus: "A domicile continues until another is acquired; before a domicile can be considered lost or changed, a new domicile must be acquired by removal to a new locality with intent to remain there, and the old domicile must be abandoned without intent to return there to."
These definitions are consistent with the definition used by the Commission in its regulation. The finding by the lower court that the Earnests were domiciled in Tennessee during the period in question is consistent with these definitions. What is inconsistent with this finding is the declaration of domicile by the Earnests through filing homestead exemption in 1982-1984. Based on this filing under oath, the Earnests, despite their declaration of intent in 1980, had a Mississippi domicile for those three years.
DID THE EARNESTS MAINTAIN LEGAL OR ACTUAL RESIDENCE IN MISSISSIPPI FROM 1980 TO 1988?
The statutory section defining "legal resident" clearly indicates that domicile and legal or actual residence for purposes of incurring liability for income tax are separate and distinct concepts. The Commission argues that the chancellor failed to appreciate this distinction. This appears to be the case.
In the opinion of May 22, 1992, the chancellor stated:
10. The Mississippi Legislature has blurred this rule of law through their questionable definition of what constitutes a resident. Clearly through Mississippi case law, and even the Commission's definition the Taxpayers can have only one domicile at any given time. From the evidence the Court must find that the domicile of the Taxpayers was changed by their move from the Dottley Drive address in Southaven, Mississippi to Memphis, Shelby County, Tennessee and has remained since that date. Even the houses located in Mississippi do not constitute their legal or actual residence. An administrative agency may not exceed its authority by issuance of regulations which enhance statutory provisions to the detriment of citizens. Mississippi Public Service Commission v. Mississippi Power and Light Company, 593 So.2d 997 (1991).
The chancellor apparently considered the question of domicile dispositive of the Earnests' liability. It is unclear why he considered the definition of resident "questionable."
It seems apparent from the statute that the legislature intended to impose income tax liability on persons who were legal or actual residents even though they, by their intent, were domiciled elsewhere. This Court has stated that domicile and residence are not synonymous or interchangable terms. Jones v. State, 207 Miss. 208, 213, 42 So.2d 123, 125 (1949); Alston v. Newcomer & Kausler, 42 Miss. 186, 192 (1868). Domicile is residence coupled with intention of remaining; it consists *319 of an act and an intent. Residence is a fact to be determined without regard to intent. Id. at 187. Domicile can have a strong subjective content whereas residence is highly objective or fact-based.
Through its regulation, the Commission has set forth certain factors to look at to determine whether a person is a resident. These include the following:
(1) maintaining a home, apartment or other place of abode in the state;
(2) exercising the rights of citizenship by meeting the requirements to vote;
(3) enjoying the benefit of homestead exemption;
(4) otherwise exercising his right or privilege of suffrage. Consistent with caselaw, domicile is not required. To change residence some "positive action" is required.
The chancellor in the present case concluded that the regulation was more inclusive than the legislature intended. This conclusion was not explained, and the chancellor offered no definition of his own. In Brady v. Getty Oil Company, 376 So.2d 186, 190 (Miss. 1979), this Court recognized that administrative agencies are called upon to interpret the laws enacted by the legislature and that the continued reenactment of a law is an inference that the legislature intended no change in this interpretation. The definition of legal resident and actual resident has been included in the Mississippi income tax regulations since 1971.
The Commission in its order made the following findings:
1. Prior to 1980 it is uncontested that taxpayers were residents of Mississippi for all purposes.
2. Taxpayers have continuously maintained a residence in Mississippi since 1980 and have also established a residence in the State of Tennessee.
3. Taxpayers are husband and wife and have lived together before and after 1980.
4. Either one or both taxpayers have exercised their right to vote in the State of Mississippi in the years 1980, 1983, 1984, 1985, 1987, 1988, and 1989. Neither taxpayer has ever registered to vote in the State of Tennessee.
5. Taxpayers claimed homestead exemption in the State of Mississippi for the years 1982, 1983 and 1984.
6. Taxpayers both possess Mississippi and Tennessee driver's licenses and have registered vehicles in both states.
7. In August of 1983, taxpayers established a Ford dealership in Olive Branch, Mississippi, and represented at that time that they were residents of the State of Mississippi.
Each of these findings is supported by the subsequent testimony before the chancellor and has not been disputed.
Looking at the objective facts of this case, the Commission concluded correctly that the Earnests were legal residents for purposes of imposing tax liability. Each of the criteria set up to determine whether an individual is taking advantage of Mississippi citizenship was present. There was nothing arbitrary or capricious about the determination. The Earnests could easily have gotten Tennessee driver's licenses and registered to vote in Tennessee. The chancellor was clearly in error.
DID THE LOWER COURT IMPROPERLY APPLY THE STANDARD OF REVIEW IN THIS CASE?
The standard of review was set out in Mississippi State Tax Commission v. Package Store, Inc., 208 So.2d 46, 48 (Miss. 1968) as follows:
The test to be applied by an appellate court to a decision of a commission or administrative agency is whether such decision is supported by substantial evidence or whether such action is arbitrary, capricious, unreasonable or an abuse of discretion.
In State Tax Commission v. Vicksburg Terminal, 592 So.2d 959, 961 (Miss. 1991), the Court stated:
This Court's review of an administrative agency's decision has been stated as follows:
Our Constitution does not permit the judiciary of this state to retry de novo matters on appeal from administrative *320 agencies. Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal designated to hear the appeal. The appeal is a limited one, however, since the courts cannot enter the field of the administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party. This rule has been thoroughly settled in this state.

Mississippi State Tax Commission v. Mississippi-Alabama State Fair, 222 So.2d 664, 665 (Miss. 1969) (emphasis added).
While this review is limited, the Court is not totally bound by the Commission's interpretation of a taxation statute. As stated in Mississippi State Tax Commission v. Dyer Inv. Co., Inc., 507 So.2d 1287, 1289 (Miss. 1987):
Ordinarily the scope of judicial review of the actions of an administrative agency is limited by the familiar arbitrary and capricious standard. The State Tax Commission is such an agency and, accordingly, both the Chancery Court and this Court were and are limited in appellate authority. See Tenneco, Inc. v. Barr, 224 So.2d 208, 214-215 (Miss. 1969). Notwithstanding, this Court will not defer to the Commission's interpretation of a taxation statute when that interpretation is repugnant to the plain meaning thereof. See Crosby v. Barr, 198 So.2d 571, 573-74 (Miss. 1967); State Tax Commission v. Reliance Manufacturing Co., 236 Miss. 462, 470-71, 111 So.2d 225, 228 (1959).
In HTI Health Services v. Department of Health, 603 So.2d 848, 851 (Miss. 1992), the Court looked at the definitions of "arbitrary" and "capricious" in the following:
In [Dept. of Health v.] S.W. Miss. Med. Ctr., 580 So.2d [1238] at 1239 [(Miss. 1991)], we stated:
The terms "arbitrary" and "capricious" are open-texted and not susceptible of precise definition or mechanical application. We find helpful meanings North Carolina has assigned in a not dissimiliar context:
"`Arbitrary means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone,  absolute in power, tyrannical, despotic, non-rational,  implying either a lack of understanding of or a disregard for the fundamental nature of things. `Capricious' means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles... ."
While it is clear that the lower court used the correct arbitrary and capricious standard of review, the conclusion of the court cannot be supported. All the findings of the Commission in its order are supported by the evidence and were uncontested by the Earnests at both the administrative hearing and the trial. Further, the interpretation of the statute by the Commission is not one in conflict with the plain meaning of the statute. The criteria for determining legal residence are ones which can be applied without having to resort to whimsy or caprice. If an individual does certain things, such as registers and votes or files a homestead exemption, then the liability attaches.
The lower court offered no support for its conclusion that the decision of the Tax Commission was arbitrary and capricious. Under the facts of this case, the lower court erred in its conclusion, although it knew the right standard of review.

CONCLUSION
The decision of the lower court is reversed and the Commission's finding that the Earnests *321 are liable for Mississippi personal income tax for the years 1980 through 1988 is reinstated. While the Earnests established that they intended to make Tennessee their domicile, they still retained sufficient ties to Mississippi and availed themselves of the privileges of state citizenship to be legal residents for tax purposes. They continued to vote in Mississippi elections, they held Mississippi drivers licenses, and they filed for homestead exemption for three years. The court erred in concluding that the Commission was arbitrary and capricious.
REVERSED AND RENDERED AND THE FINDING OF THE TAX COMMISSION IS REINSTATED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE and JAMES L. ROBERTS, Jr., JJ., concur.
BANKS, J., not participating.