# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01100-SCT

*EMHART INDUSTRIES, INC.*

*v.*

*MISSISSIPPI STATE TAX COMMISSION*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/26/1999 |
| TRIAL JUDGE: | HON. STUART ROBINSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMIE G. HOUSTON, III |
| | FRANK A. WOOD, JR. |
| ATTORNEYS FOR APPELLEE: | BOBBY R. LONG |
| | AMANDA LEE TRAWICK |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 7/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BANKS, P.J., WALLER AND DIAZ, JJ.:**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Emhart Industries, Inc. ("Emhart") is a Connecticut corporation authorized to do business in the State of Mississippi. On July 19, 1989, the Emhart Board of Directors declared a dividend of $1,000,000,000 to be paid to its sole shareholder and parent, Emhart Corporation. In a written consent, Emhart's directors declared that the dividend would be paid out of Emhart's retained earnings and capital surplus. The Emhart directors also declared that the dividend would be paid by way of a promissory note issued by Kwikset Corporation[1] to Emhart in the amount of $73,600,000, and by way of a promissory note issued by Emhart to the Emhart Corporation in the amount of $926,400,000. Emhart endorsed and transferred to Emhart Corporation the Kwikset promissory note of $73,600,000, as partial payment of the declared dividend. Additionally, Emhart transferred its promissory note, in the amount of $926,400,000, to Emhart Corporation as payment of the balance of the declared dividend.

¶2. The purpose of the dividend was to enable Emhart Corporation [Emhart's parent] and its parent, Black & Decker Corporation, to pay off a portion of a loan they received in connection with Black & Decker's acquisition of Emhart Corporation. Emhart did not provide any security for the promissory note, making the note payable on demand. Furthermore, interest was to be paid semi-annually on the dates of January 19th

and July 19th of each year, commencing January 19, 1990.

¶3. Pursuant to an audit of Emhart's Mississippi franchise tax returns for the years ending September 24, 1989, and September 30, 1990, the Mississippi Tax Commission recomputed the book value of the accounts reflected on Emhart's returns. The Commissioner determined that the amount of capital employed within the State of Mississippi for the periods ending September 24, 1989, and September 30, 1990, was $51,804,507 and $61,668,774, respectively. Emhart, however, had reported [$27,595,716] for the period ending on September 24, 1989, and $18,720,000 for the period ending on September 30, 1990. Since Emhart's financial operation was not affected and did not diminish during these periods, even after the $1, 000,000,000 dividend was issued to Emhart Corporation, the Commission found that Emhart's reported capital was not true capital employed within the State of Mississippi and therefore taxed it on the true book value pursuant to Miss. Code Ann. § 27-13-11 (1999). The Chancery Court of the First Judicial District of Hinds County affirmed the Commission's decision. Aggrieved, Emhart timely perfected this appeal.

## STATEMENT OF THE CASE

¶4. Emhart argues that capital subject to the corporate franchise tax is determined by statute and specifically points to Miss. Code Ann. § 27-13-9 (1999), which provides that amounts designated for payment as dividends, when "definitely and irrevocably placed to the credit of stockholders, subject to withdrawal on demand," should be excluded from capital. In the present case, the Chancellor found that Emhart's promissory note, which was used to partially pay the July 19, 1989, dividend, did not satisfy the statute. Emhart contends the Chancellor's decision was "arbitrary, capricious, and repugnant to the plain meaning of the statute."

¶5. Emhart further asserts that it followed generally accepted accounting principles and all formalities required in declaring, paying and recording the dividend. Emhart also argues that the promissory note was a legally binding negotiable instrument with commercially reasonable rates. Likewise, Emhart contends that there was no basis for treating the Kwikset note and the Emhart note differently, although the Chancellor found the Emhart note was not a true reduction in capital, but was merely a "paper transaction undertaken for perceived tax benefits." Finally, Emhart asserts that there was no capital infusion into Emhart and that the dividend was property that was treated on its books as a debt.

¶6. The Commission, however, argues that Emhart declared a dividend but never fully placed the payments to the credit of its sole shareholder, Emhart Corporation. The Commission contends that the promissory note was not created out of a true debtor/creditor relationship because no security was provided and no actual payments on the note were provided until three years after the first payment was due. The Commission further asserts that Emhart only "shuffled some money figures from its capital section to its notes payable section of its balance sheet." Likewise, it argues that Emhart continued to employ the same amount of capital before and after declaring the dividend. The Commission also points out that no assets of any kind were reduced when Emhart paid the dividend to Emhart Corporation, unlike the Kwikset note, where the transferred note to Emhart Corporation reduced Emhart's accounts receivable. Finally, the Commission cites Miss. Code Ann. § 27-13-9 and argues that notes which are payable to an affiliated company should also be included in the franchise tax base when the note is a substitute for paid-in capital.

## STANDARD OF REVIEW

¶7. The test to be applied by an appellate court to a decision of a commission or administrative agency is

whether such decision is supported by substantial evidence or whether such action is arbitrary, capricious, unreasonable, an abuse of discretion or violated some statutory or constitutional right of the complaining party. *State Tax Comm'n v. Earnest*, 627 So. 2d 313, 319 (Miss. 1993); *see Mississippi Real Estate Comm'n v. Hennessee*, 672 So.2d 1209,1214 (Miss. 1996). "While this review is limited, this Court is not totally bound by the Commission's interpretation of a taxation statute." *Earnest*, 627 So. 2d at 320.

## DISCUSSION

### I. WHETHER THE PROMISSORY NOTE FROM A SUBSIDIARY TO ITS PARENT SHOULD BE EXCLUDED FROM CAPITAL AS DEBT IN ACCORDANCE WITH MISS. CODE ANN. § 27-13-9.

¶8. This case involves the proper interpretation of Mississippi's corporate franchise tax laws. The Mississippi Legislature imposes on all corporations doing business in this state, a franchise tax which is computed based on the capital of the corporation. *See* Miss. Code Ann. § 27-13-7 (1999). The legislature bases the franchise tax on the value of the collateral as reflected in the corporation's financial books and records. Miss. Code Ann. § 27-13-11 (1999) provides in relevant part as follows:

> For the purpose of determining the amount of capital, as defined in Section 27-13-9 (1972), as amended, the book value of the accounts as regularly employed in conducting the affairs of the corporation shall be accepted as prima facie correct, **except where the commissioner determines that the book value does not properly reflect capital employed in this state and in that situation the commissioner's determination of capital shall be prima facie correct.**

(emphasis added). The law, thus, provides that the corporation's records shall be deemed correct unless the commissioner determines the book value fails to properly reflect capital. In such a case, the commissioner's determination is then found to be prima facie correct.

¶9. Miss. Code Ann. § 27-13-9 sets forth the method by which franchise taxes are imposed upon capital within this state, and reads in relevant part as follows:

> (1) The tax imposed, levied and assessed, under the provisions of this chapter, shall be calculated on the basis of the value of the capital employed in this state for the year preceding the date of filing the return, whether a calendar year, or fiscal year, except where otherwise provided in this chapter, measured by the combined issued and outstanding capital stock, paid-in capital, surplus and retained earnings; provided, that in computing capital, paid-in capital, surplus and retained earnings, there shall be included deferred taxes, deferred gains, deferred income, contingent liabilities and all true reserves, including all reserves other than for definite known fixed liabilities which do not enhance the value of assets; **and amounts designated for the payment of dividends shall not be excluded from such calculations until such amounts are definitely and irrevocably placed to the credit of stockholders, subject to withdrawal on demand; provided, however, there shall not be included in the value of the capital stock any sums representing debts, notes, bonds and mortgages due and payable, except where notes or debts due are provided by an affiliated company as a substitute for stock or paid-in capital;** nor depreciation reserves, bad debt reserves, nor reserves representing valuation accounts. . . .

(emphasis added). Accordingly, Emhart argues that the promissory note issued to Emhart Corporation

should be excluded from capital because the note was "definitely and irrevocably placed to the credit of stockholders, subject to withdrawal on demand."

¶10. This case is one of first impression in Mississippi and centers around one question: whether a promissory note issued by a subsidiary to its parent is excluded as debt for purposes of computing the corporate franchise tax under Miss. Code Ann. § 27-13-9? Both Emhart and the Commission agree that had the promissory note been to a third party, and not to the parent itself, the debt would be excluded from capital under the statute. The parties do not agree, however, on whether a subsidiary should be able exclude a promissory note from capital when the note is issued to a parent corporation.

¶11. While recognizing that a debt from the subsidiary to a third party would have been a legitimate debt and excluded from capital under Miss. Code Ann. § 27-13-9, this Court must then address the concerns of allowing the same exclusion for notes made between subsidiary and parent companies. This Court concludes that it is possible to have a legitimate debt between a subsidiary and its parent, which would be excluded from capital as debt under the statute. However, we do not hold such a "true debt" existed in the present case.

¶12. First, the Commission contends the note was not "definitely and irrevocably placed to the credit of the stockholders, subject to withdrawal on demand." *See* Miss. Code Ann. § 27-13-9 (1999). This Court agrees with the Commission's interpretation. If the $926,400,000 had been placed definitely and irrevocably within the hands of Emhart's parent, then Emhart would not have been able to operate in the same manner as it did before issuing the note. Emhart did, however, continue to operate in the same manner, generating the same amount of receipts, and did so with negative capital. Furthermore, the note was not subject to withdrawal on demand. If Emhart's parent had demanded the note be paid, it would have been impossible to do so without distributing property or borrowing from an unrelated financial institution.

¶13. Second, Emhart did not pay the note out of its retained earnings and surplus as instructed by the directors. Instead, Emhart issued a note to its parent without providing any security and without reducing any assets as is normally done when a dividend is declared. Likewise, Emhart did not pay interest in accordance with the promissory note and waited over three years after the first payment was due to make a payment on the promissory note itself. When Emhart did finally pay off the note, it issued another intercompany note payable in the amount of $1 billion.

¶14. Emhart counters these allegations by asserting that the dividend had a valid business purpose. According to Emhart, when Black & Decker acquired the stock of Emhart Corporation in April 1989, the financing agreement imposed material restrictions on Black & Decker and its subsidiaries which prohibited incurring any outside debt. To meet the obligations under the financing agreement, Black & Decker and its subsidiaries had to reduce their debt by approximately $1 billion by June 1991.

¶15. After hearing the above testimony, the Chancellor, in his Opinion and Order of the Court, affirmed the decision of the Commission and reasoned in relevant part as follows:

> The terms of Emhart's promissory note provided that the note was unsecured and payable upon demand. Further, the note provided that interest would be paid semi-annually on January 19 and July 19 of each year, commencing January 19, 1990. Emhart did not comply with this interest requirement and in fact made no payment for a period of more than three years. Subsequently, interest was paid in

full, with interest at the stated rate. However, the record reflects that Emhart's business activity in Mississippi did not diminish after the dividend was issued. . . .

\*\*\*

Although Emhart and its parent company went through the formalities in declaring a dividend, the evidence demonstrates that this was merely a paper transaction undertaken for perceived tax benefits. Emhart argues that the "complete payment of the note is the most basic evidence of a true debtor creditor relationship that was respected by both parties from the beginning. . . ." However, better evidence of the true relationship may be found in the fact that the interest was not paid in strict accordance with the promissory note and that actual payments on the promissory note were not made for a period in excess of three years. The statutory requirement that dividends be "definitely and irrevocably placed to the credit of stockholders" envisions that the capital would no longer be available to the declaring corporation's business and would not be subject to the franchise tax. In the case sub judice, however, the dividend was never "definitely and irrevocably placed to the credit of stockholders." This was not an arms length transaction conducted in accordance with normal business practices, but instead was a transaction between a parent and subsidiary which was conducted in accordance with the benefit of both.

This Court finds the chancellor's reasoning persuasive. The Commission's determination is considered to be prima facie correct, and the burden is on Emhart to demonstrate that the Commission's determination was wrong. Miss. Code Ann. § 27-13-11 (1999). Emhart has failed to meet this burden.

## CONCLUSION

¶16. This Court finds that the decision of the Chancery Court of the First Judicial District of Hinds County, Mississippi, was neither arbitrary nor capricious and was not contrary to the plain meaning of the statute. Furthermore, this Court recognizes that while it is possible to have a true debt relationship between a parent and subsidiary, such a relationship did not exist here. Therefore, we affirm the findings that the amount of the promissory note between Emhart and its parent, Emhart Corporation, should be included as capital for purposes of determining the amount of state corporate franchise tax owed.

¶17. **AFFIRMED.**

**PRATHER, C.J., PITTMAN AND BANKS, P.JJ., McRAE, MILLS AND DIAZ, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY COBB, J.**

**SMITH, JUSTICE, DISSENTING:**

¶18. The majority holds that a true debt relationship between the parent company and subsidiary does not exist in the ase at bar and includes as capital for state corporate franchise tax purposes the amount of the promissory note between Emhart and Emhart Corporation. I disagree and therefore dissent.

¶19. The definition of capital is governed by Miss. Code Ann § 27-13-9. Dividends paid are clearly excluded by the statute. Here, Emhart paid a dividend which is shown as such on both its records and tax returns. The Commission cannot ignore these facts for franchise tax purposes and interpret the statute by expansion so as to include a liability. This Court has repeatedly held that such expansion of the definition of

capital beyond that set forth under the statute cited above is not permissible. *Mississippi State Tax Comm'n v. Lady Forest Farms, Inc.*, 701 So. 2d 294, 296-97 (Miss. 1997).

¶20. Additionally, it is equally clear that the Commission's treatment of the Emhart note was inconsistent with its treatment of the note issued by Emhart's subsidiary, Kwikset Corporation. The Kwikset note was never included in Emhart's capital as partial payment of the dividend. The Commission excluded the Kwikset note from capital. This was clearly inconsistent with its decision to include the Emhart note as capital. The Emhart note was excludable from capital as a dividend and because it was a demand note on its very face. Emhart received absolutely nothing in consideration or exchange, or pledge any security for Emhart's issuance of the promissory note. Thus, a true debtor-creditor relationship was established here. The note in question was not substituted capital, but rather was simply a note which was excludable both from capital and the franchise tax.

¶21. I respectfully dissent.

**COBB, J., JOINS THIS OPINION.**

1. Kwikset Corporation was a subsidiary of Emhart.