PATTERSON, Chief Justice,
for the Court:
This is an appeal from the Chancery Court of the First Judicial District of Hinds County wherein Chancellor J. C. Stennett enjoined the Mississippi Air & Water Pollution Control[1] Permit Board from proceeding against Pets & Such Foods, Inc. (hereinafter Pets & Such).
Pets & Such is engaged in the business of purchasing eggs which are rejected as human food and converting them into powdered form for use as pet food. Pets & Such began production in September of 1974 on industrial land in Hinds County and subsequently, the Permit Board and plant personnel received complaints about unpleasant odors emitted from the plant. In an attempt to rectify the problem, Pets & Such purchased equipment at great costs from Hormel, Inc., which guaranteed the odor would be eliminated. However, the equipment, when installed, failed to eliminate the odor and on July 25, 1978, the Permit Board revoked the operating license of Pets & Such. Aggrieved Pets & Such sought redress.
The method of procedure from a permit revocation is set forth in Section 49-17-29 of the Mississippi Code Annotated (Supp. 1980) in pertinent part as follows:
Within thirty (30) days after the date the permit board takes action upon permit denial, modification or revocation, as shown on the minutes of the permit board, any permittee aggrieved by such action may file a written request for a formal hearing before the permit board.
Initially, Pets & Such followed this statutory method for a formal hearing. However, this hearing was never concluded because Pets & Such applied for and received a temporary injunction from the chancery court stopping the administrative proceeding. Following a petition by the Permit Board to modify or dissolve the temporary injunction, the chancellor permanently enjoined the Permit Board from proceeding against Pets & Such.
Section 49-17-29 of the Mississippi Code Annotated (Supp.1980) makes provision for the establishment of air quality standards by the commission:
In order to carry out the purposes of sections 49-17-1 to 49-17-43, the commission may set standards of air and water quality for the state or portions thereof. Such standards of quality shall be such as to protect the public health and welfare and the present and prospective future use of such air and of such waters....
As admitted by Dwight K. Wylie, the Chief of Air Quality Control for the Mississippi Air and Water Pollution Control Commission, the only guideline promulgated which relates to the emission of odors is found in Section 5(2) of the Commission’s Air Quality Regulations which states:
Miscellaneous Chemical Emissions. No person shall cause, permit, or allow the emission of toxic, noxious, or deleterious substances, in addition to those considered in these regulations, into the ambient air in concentrations, sufficient to affect human health and well-being, or unreasonably interfere with the enjoyment of property or unreasonably and adversely affect plant or animal life be *1355 yond the boundaries of the property containing the air pollution source.
As is apparent, this section does not specifically mention the word odor. Also, it sets no objective standard with which to measure concentrations of odors in the ambient air. In delegating powers to the Commission, the legislature prescribed the rule for their guidance in Section 49-17-19. This section established the broad guidelines from which the Commission should have established definitive standards. Since this was not done, Pets & Such was entitled to an injunction.
As stated in State v. Allstate Insurance Co., 231 Miss. 869, 97 So.2d 372, 375 (1957):
Legislative power or functions may be delegated to an administrative agency only in the limited sense that the statute must set forth the legislative decision and must prescribe adequate standards or rules for the agency’s guidance. It cannot be vested with arbitrary and uncontrolled discretion. 73 C.J.S. Public Administrative Bodies and Procedures § 29. In other words, constitutional theory legitimizes the situation by taking the position that constitutional provisions do not force upon the legislature and courts a monopoly of legislating and adjudicating; and that these functions in a restricted manner may be delegated to executive or administrative agencies by the acts of the legislature if the latter prescribe limits within which the administrative grantees are to operate.
See also, Broadhead v. Monaghan, 238 Miss. 239, 117 So.2d 881 (1960).
The appellant Permit Board places heavy reliance on its argument that Pets & Such should be required to exhaust its administrative remedies. In our opinion this doctrine is not applicable to a case such as the instant one where no definite standards have been set. As stated in Campbell Sixty-Six Express v. J & G Express, 244 Miss. 427, 440, 141 So.2d 720, 726 (1962):
We do not think this is a proper case for applying the doctrines of exhaustion of administrative remedies, and of primary jurisdiction. Under the averments of the bill, the complainants’ remedy before the commission is not adequate. Where no adequate administrative remedy is provided, the exhaustion doctrine is not applicable. Moreover, there is reasonable doubt as to the availability and adequacy of the administrative remedy.
The Mississippi Air and Water Pollution Control Commission failed to set definable, objective standards with respect to the emission of odors. The chancellor below did not err in permanently enjoining the Permit Board from proceeding against Pets & Such Foods. This case is therefore affirmed.
AFFIRMED.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.

. “The words ‘Mississippi Air and Water Pollution Control Commission’ wherever they may appear in the laws of the State of Mississippi shall be construed to mean the Mississippi Commission on Natural Resources.” Miss. Code Ann. § 49-17-7 (Supp. 1980).