ROY NOBLE LEE, Chief Justice,
for the Court:
Eugene B. Penick, Jr., operator of a creosoting plant in Noxubee County, was ordered by the Bureau of Natural Resources to obtain a permit for its operation. He appealed the order of the full commission to the Chancery Court of Noxubee County, which upheld the order of the Bureau. He has appealed to this Court and assigns three (3) errors in the proceedings below.

Facts

In 1950, Mr. Woody Jones obtained a lease on certain 16th Section land in Nox-ubee County. On this leasehold, he constructed and began to operate a creosoting plant. In 1965, the Corps of Engineers contacted Jones and advised that he could no longer allow creosote residue to run out on the ground. A holding pond was constructed, approved by the Corps of Engineers, which allowed the creosote runoff to go into the pond. The pond measured approximately 40 feet x 50 feet. Jones continued with his operation until 1973, when he sold out to Mr. Emmett Farrar, who owned and operated the business until appellant took it over in 1980. Appellant had leased the business with an option to purchase, but has never exercised his option.
Appellant’s troubles started approximately six (6) months after he assumed operation of the business. They came in the form of Environmental Protection Agency regulations which the State of Mississippi adopted in 1980. Appellant was informed by the Bureau on Natural Resources that the operation of the holding pond involved hazardous waste and that, in order to continue its operation, a permit would be required. To obtain a permit, the signatures of both the operator and owner was required. Appellant was more than willing to sign, but the owner, Farrar, *180 wanted nothing to do with it, and refused to sign.
Failure to have a permit is the cause of the real problem here. To state the problem simply: if appellant doesn’t have a permit he cannot operate, and if he cannot operate the regulations require him to clean up his toxic pond. Cleaning up the pond would require financial resources far beyond that of appellant. Throughout the record, appellant indicates that he wants .to do whatever is necessary to rectify the situation. He states that he has ceased operation of the pond and no longer discharges anything into it. This does not solve the problem, however. The toxic pond remains, and it is someone’s responsibility to clean it up. The pond could remain, if appellant had the required permit because the permit provides for certain monitoring procedures.
Since appellant had not obtained the permit he was ordered by the Mississippi Commission on Natural Resources on February 27, 1985, to cease operation of the hazardous waste unit and commence with closure of the unit. The order contained a complicated procedure and schedule to be followed in cleaning up the pond. The order also required appellant to obtain insurance for sudden and non-sudden releases of waste from the pond. The evidence is undisputed that the required insurance would have cost appellant approximately $40,000.
Appellant appealed the Commission’s order and on October 28,1986, was granted a hearing before the full Commission. The evidence presented at the hearing revealed the following:
(1) As long as Farrar refused to sign the permit appellant would be unable to obtain one.
(2) Studies were conducted by experts at Miss. State University which revealed that no contamination of ground water had taken place outside the pond. These experts also testified that the pond sits on top of a chalk formation some 600 feet thick, and under this chalk formation runs the Utah Aquafier, and that for this pond to contaminate the Aquafier some 60,000 years would have to pass.
(3) A financial expert from Miss. State University stated that appellant’s approximate yearly income has been about $20,-000. The expert stated that for appellant to be required to pay for the entire cleanup of the pond would be to surely place him in bankruptcy.
(4) The estimated cost of cleanup could run anywhere from $50,000 to approximately $250,000.
(5) Even though there had been no contamination there was present a potential for pollution.
(6) If the parties involved did not form a plan to clean up the pond, the U.S. Superfund would do it. The federal government would, in turn, proceed against the people involved for reimbursement to Superfund and this would be at much greater expense than not involving the federal government.

Law

The three assignments of error are consolidated into one question, i.e., whether or not the lower court erred in holding that the decision of the Bureau of Natural Resources was not arbitrary and capricious and was supported by substantial evidence.
The parties are in agreement that, unless the lower court is manifestly wrong in holding that the action of the Bureau was not a result of a willful, arbitrary and capricious action and was not supported by substantial evidence, then the decision must be affirmed. United States v. Garner, 767 F.2d 104 (5th Cir.1985); Mississippi Comm’n on Natural Resources v. Cos-tie, 625 F.2d 1269 (5th Cir.1980); Eidt v. City of Natchez, 421 So.2d 1225 (Miss. 1985); Dixie Greyhound Lines, Inc. v. Miss. Public Service Comm’n, 190 Miss. 704, 200 So. 579 (1941).
The facts of this case are uncontradicted. The waste catch pond has not polluted and is not presently causing pollution. Appellant apparently takes the position that, therefore, the regulation should not apply to him. Mississippi Code Annotated § 49-17-3 (1972) provides that the prevention of pollution is the underlying purpose of the statute. For that purpose, the State *181 of Mississippi was granted primacy by the United States Environmental Protection Agency to administer and regulate sources of possible pollution in the state. On February 27, 1985, Mississippi adopted the federal regulations through the Mississippi Hazardous Waste Regulations as amended.
Sections of the regulations pertinent to the case sub judice are §§ 261, 264, 265 and 270. They specifically include creosote and creosote compounds as hazardous waste; specify standards applicable to owners and operators of hazardous waste facilities; and Section 270 provides that the operator of a facility handling hazardous waste must obtain a permit to operate in order that monitoring procedures might be carried out, and further, that the owner of such a facility (creosote plant) must also sign the permit. Appellant is in the unfortunate situation that the owner Farrar refuses to sign the application for the permit. Therefore, the statute is not complied with, and the Bureau had no choice except to close the impoundment. Likewise, the lower court had no discretion in the matter, and, under the law, was required to affirm the order of the Bureau.
In State v. Pascagoula Veneer Co., 227 So.2d 286 (Miss.1969), the Court held that it is unlawful for a person to operate equipment which will cause the issuance of air contaminants unless he holds a permit from the Air and Water Pollution Commission, and in a prosecution for violation of this article, the State’s evidence must show not only the issuance of air contaminants, but also the absence of a permit from the Commission.
In the present case, it was clear that creosote compounds were present and that they presented a clear potential for polluting. Thus, the first part of Pascagoula Veneer was met. It is even clearer that appellant did not have the required permit, thereby meeting the second part.
There being no reversible error in the proceedings below, the judgment of the lower court must be affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.