SMITH, Justice.
This case comes on appeal from the Scott County Chancery Court. The plaintiffs, Weems’ et al, (Weems), filed suit to prevent the transfer of a solid waste landfill permit from Betco, Inc. to Chambers, MS. The permit was issued to Betco on November 28, 1989. Betco then negotiated to sell the landfill to Chambers, MS. During this period, *268 Chambers contracted with Betco to operate the landfill. It submitted a request to the Department of Environmental Quality to have Betco’s permit transferred to Chambers. The request was denied on January 8, 1991, largely because the Mississippi legislature enacted a one year moratorium on the issuance of new permits and transfer of existing permits for solid waste landfill facilities.
Chambers requested, and was granted, a full evidentiary hearing on the issue. On May 14, 1991, the Permit Board voted to grant the exception to the moratorium and allowed the procession of the transfer application. On October 4, 1991, Weems, et. al. filed a complaint in the Chancery Court of Scott County alleging the facility was being operated illegally because Chambers did not have a valid permit. On November 3, 1991, the chancery court held that the Commission had subject matter jurisdiction of the suit and the plaintiffs had not exhausted their administrative remedies. The chancery court lacked subject matter jurisdiction at that point.
On January 16, 1992, William S. and W. Lamar Weems filed a complaint with the Commission alleging that Chambers was operating the facility without a valid permit. A non-evidentiary hearing was held on February 27, 1992 to determine whether the Commission had cause to further investigate the allegations. It found that it lacked jurisdiction of Weems’ allegation of the issuance, modification, revocation or transfer of the Betco permit, but it had jurisdiction to the rules and regulations requiring a contract operator of a solid waste facility to hold a permit. It dismissed Weems’ allegations.
On March 27, 1992, Weems, et al filed a complaint with the Chancery Court. The Commission filed a summary judgment motion, and Weems responded to the motion by asking summary judgment be awarded in Weems’ favor. The chancellor determined that summary judgment should be awarded to Weems on the issue of whether a permit may be transferred from one entity to another in violation of the moratorium statute.
The chancellor noted the authority of the Commission, Permit Board, and Department of Environmental Quality to issue rules and regulations concerning those agencies. Believing the transfer was not clearly interpreted or determined, he remanded the action to those agencies for their own determination not inconsistent with his opinion. Feeling aggrieved, the Commission filed this appeal on the following issues:
I. WHETHER THE CHANCELLOR HAD JURISDICTION TO AWARD RELIEF TO THE PLAINTIFFS WHEN THE RELIEF WAS NEITHER PRAYED FOR, GENERALLY OR SPECIFICALLY, NOR WAS IT OTHERWISE AVAILABLE TO THE PLAINTIFFS IN THIS PROCEEDING OR FORUM.
II. WHETHER THE ACTION WAS RENDERED MOOT WHEN THE MORATORIUM IMPOSED ON NEW OR EXPANDED NONHAZARDOUS SOLID WASTE FACILITIES, (MISS CODE ANN. SECTION 17-17-229 (1972, AS AMENDED)) WAS SUBSEQUENTLY LIFTED BY OPERATION OF LAW.
III. WHETHER THE CHANCELLOR HAD JURISDICTION OF THE PLAINTIFF’S ACTION WHEN THE PLAINTIFFS FAILED TO EXHAUST AND UTILIZE THE AVAILABLE ADMINISTRATIVE REMEDIES, INCLUDING APPEAL.
IV. WHETHER THE PLAINTIFFS HAVE STANDING TO BRING THIS SUIT.
V. WHETHER THE CHANCELLOR ERRED BY SUBSTITUTING HIS JUDGMENT FOR THAT OF THE COMMISSION’S.
On cross-appeal, Weems argues the following issues:
I. THE CHANCELLOR ERRED IN REMANDING THE CAUSE TO THE AGENCY DEFENDANTS. THIS COURT SHOULD REVERSE THE CHANCELLOR AS TO THE REMAND, RENDER A DECISION, AND ENJOIN THE COMMISSION TO FINE BETCO AND CHAMBERS A SPECIFIC DOLLAR AMOUNT IN *269 ACCORDANCE WITH SECTION 17-17-29, MCA OR APPLY OTHER SPECIFIC SANCTIONS AS PROVIDED BY LAW.
A. THE FACTS SUPPORT THE CHANCELLOR’S FINDINGS OF FAULT IN THE CONDUCT OF THE AGENCY DEFENDANTS AND THEIR EXECUTIVE DIRECTOR. THE DECISION TO REMAND WAS INCONSISTENT WITH THE FACTS IN THE CASE.
B. THE LAWS THAT REQUIRE PERMIT BOARD APPROVAL WERE APPLICABLE WHEN THE LANDFILL PERMIT WAS EFFECTIVELY TRANSFERRED TO CHAMBERS FROM BETCO WITH THE SIGNING OF THE LANDFILL SERVICES AGREEMENT. THE AGENCY DEFENDANTS EXERCISED DISCRETION TO NOT ENFORCE THE LAW.
C. THE FACTS DEMONSTRATE THAT DEFENDANTS BETCO AND CHAMBERS WERE NOT INNOCENT VICTIMS OF THE CONDUCT OF THE AGENCY DEFENDANTS.
D. THIS COURT SHOULD ENJOIN THE COMMISSION TO FIND THE DEFENDANTS, BETCO AND CHAMBERS, A SPECIFIC DOLLAR AMOUNT IN ACCORDANCE WITH SECTIONS 17-17-29, MCA, DUE TO THEIR BLATANT VIOLATIONS OF THE PERMIT LAWS FOR OVER THREE YEARS. REVOKING THE PERMIT WILL NOT BE EFFECTIVE SINCE THE PERMIT WILL EXPIRE ON NOVEMBER 28, 1994.
The Commission acted arbitrarily and capriciously in that the statutes clearly delegated authority to the Commission to enact sufficient rules and regulations to both define “transfer” and sufficiently carry out the process as a matter of important public policy. The Commission decided it had no such jurisdiction pertaining to the issuance, modification, revocation, or transfer of the Betco permit. However, the Commission also held that it did have jurisdiction over the parties and subject matter.
The direct action of Weems in filing this ease with the Chancery Court of Scott County does not run afoul of case law on the failure to exhaust administrative remedies. The case of Mississippi Air & Water Pollution Control Permit Board v. Pets & Such Foods, Inc., 394 So.2d 1353 (Miss.1981) is directly on point as an exception to the doctrine of failure to exhaust administrative remedies. The Commission admitted there were no rules and regulations available to adjudicate the issue regarding the emission of odors. The Court held that the Commission “failed to set definable, objective standards with respect to the emission of odors” and affirmed the chancellor’s ruling where Pets & Such elected to proceed on direct action in chancery rather than exhaust their administrative remedy.
The Commission presented five issues on appeal only one of which, Issue III, warrants discussion. After thorough consideration of all issues we find the Commission’s issues to be without merit. Likewise, Weems’ issues on cross-appeal do not warrant discussion and are without merit. We must affirm the chancellor.

FACTS

On November 28, 1989, Betco, Inc., (Bet-co), was issued a Non-hazardous Solid Waste Disposal permit, # SW 06201A0417, by the Mississippi Department of Environmental Quality, (DEQ) and the Mississippi Environmental Quality Permit Board, (Permit Board). Pursuant to § 49-17-28, Mississippi Code 1972, as amended, Betco, Inc. was the operator of the Clearview Environmental Landfill Control Facility (Facility), which is located on 18.5 acres of land in Scott County, Mississippi. The Facility is a non-hazardous solid waste landfill. The permit expires on November 28, 1994.
Betco negotiated to sell the property the Facility was located on to Chambers of Mississippi (Chambers), a Pennsylvania corporation with headquarters in Mississippi. The “Agreement of Sale” was dated March 7, 1991. During these negotiations, the Missis *270 sippi legislature enacted a one-year moratorium on the issuance of new permits and transfer of existing permits for solid waste landfill facilities. Miss.Code Ann. § 17-17-59
On August 3, 1990, Betco agreed to sell Chambers the entire landfill facility comprising 87.4 acres. This was contingent upon Betco transferring its permit to Chambers. On August 10, 1990, Chambers submitted a request to the DEQ to have the permit transferred. Chambers had to apply to the DEQ because the moratorium was in effect. By memorandum, the Department outlined the requirements needed to obtain an exception to the moratorium. The Permit Board met January 8, 1991, and voted to deny the exception to the moratorium.
Following the guidelines of §§ 17-17-43, 49-17-31 and 49-17-41, Miss.Code Ann., Chambers requested a full evidentiary hearing on the exception to the moratorium. In the meantime, the Mississippi Legislature extended the moratorium past April 1, 1991, to July 1, 1992. Miss.Code Ann. § 17-17-59 (Supp.1992) Beteo’s President, Bobby J. Thomas, wrote the Department requesting legal guidance.
Assuming BETCO executed such a contract (operating agreement), is it correct to conclude that notwithstanding the contract with the company, the Department of Environmental Quality would, for regulatory purposes, consider the permit holder as the operator of this facility and the contractor while providing certain daily solid waste management services at the facility under this contract with BETCO would not be required under the statutes and regulations of the Department of Environmental Quality to obtain a separate or additional permit?
The Executive Director of the Department, J.I. Palmer, Jr., responded on February 23, 1991:
For regulatory purposes, the holder of a permit is deemed to be the operator of the facility for all purposes. The decision to operate a facility with hired employees or independent contractors, or both, is a matter of discretion with the permittee/operator. All permitting and enforcement actions which may arise by virtue of operation of such facilities will be directed exclusively at the permittee/operator who will, at all times, be responsible for compliance with conditions of the permit.
On March 7, 1991, Betco and Chambers Clearview Environmental Landfill, Inc. entered into a contract (Landfill Service Agreement) which stipulated Chambers Clearview would provide construction and management services to Betco for a fee. Betco maintained ownership and legal liability of the landfill. Betco and Chambers, MS entered into an Amendment to the Agreement of Sale dated August 3, 1990, to extend the original agreement in the event of an unanticipated delay.
On May 14,1991, a full evidentiary hearing was held before the Permit Board to determine whether an exception to the moratorium should be granted to allow the permit transfer from Betco to Chambers. The Permit Board voted to grant the exception to the moratorium and allowed the procession of the transfer application. The Department then advised Chambers to file another application for the transfer of the permit because the first application, dated August 10, 1990, was technically an exception to the moratorium. On May 30, 1991, Weems, et. al., appealed to the Chancery Court of Scott County to contest the Permit Board granting the exception to the moratorium. The chancellor ruled that the Permit Board lacked authority to grant the exception to the moratorium because the Facility was not a “new or expanded facility” as defined by the moratorium statute.
On August 7, 1991, Chambers and Betco filed another application for the permit transfer which was essentially the same as the application filed August 10,1990. (C.P. 1189) Following this application, William S. Weems wrote the Executive Director of the Department questioning the agreement between Betco and Chambers. On August 12, 1991, the Executive Director, Palmer responded:
Since BETCO, Inc. holds a valid permit for this facility, it may construct and operate the facility at any time during the life of the permit, as long as the operation is in accordance with the permit condition. It *271 is not unlawful for BETCO, Inc. to have a contractual agreement with Chambers to construct and operate the facility. In fact, many permit holders, including the City of Jackson, have chosen to use a contractor to construct and operate their landfill and waste water treatment facilities. In such cases, the permit has not been transferred into the name of the contractor, but has remained in the name of the owner, which is fully responsible for compliance with permit requirements.
Weems wrote Palmer again questioning the Betco-Chambers agreement. On August 26, 1991, Palmer responded:
Permit No. SW06201A0417 was issued by the Permit Board to BETCO as the per-mittee/owner/operator of the subject facility. This permit authorizes BETCO to construct and operate their facility, subject to the terms and conditions of the permit itself. BETCO may, if it chooses, operate their facility either with their own forces or through the use of contract support. Since we look solely to BETCO for compliance with the terms and conditions of their permit, we are not involved, as mentioned in my earlier letter, with the relationship between BETCO and any contractor BET-CO chooses to use. As with numerous other such arrangements at various waste water and solid waste facilities in Mississippi I mentioned in my letter, we are not a party to these contracts, do not participate in their negotiation or consummation, and don’t even have copies of them, except as we may ask from time to time to aid someone else seeking to put together a similar contract.
If BETCO has been construction or operation [sic] of their landfill either by itself or with contractor involvement, that is lawful and authorized by Permit No. SW06201A0417. BETCO bares a full responsibility for such activities, as permit-tee/owner/operator, until and unless the Permit Board approves a transfer of Permit No. SW0601A0417 to some other party-
On October 4, 1991, Weems, et al, filed a Complaint in the Chancery Court of Scott County alleging that Chambers was unlawfully operating the facility without a valid permit, i.e. operating the facility as though a transfer between Betco and Chambers occurred.
On November 3, 1991, the chancery court held the Commission on Environmental Quality held subject matter jurisdiction over the allegations in the Complaint, and the plaintiffs failed to exhaust their administrative remedies because no action was filed before the Commission. The Chancery Court held that it lacked subject matter jurisdiction on the plaintiffs complaint and the case was dismissed.
On January 16, 1992, William S. Weems and Dr. W. Lamar Weems filed a “Complaint and Petition for Hearing” before the Commission alleging that Chambers was operating the facility without a valid permit. Weems argued that this was a violation of (1) the moratorium statute, § 17-17-59; (2) the permit; and (3) the disclosure statute, § 17-17-503. They requested that the Commission find Chambers operating the landfill illegally, and issue a cease and desist order of the landfill. Weems amended the complaint on February 18, 1992 to request additional relief to (1) have the Commission permanently enjoin Chambers and Betco from operating the landfill if they refused to cease operating it voluntarily; (2) permanently revoke the permit issued to Betco; (3) reject Chambers’ application for transfer of the Betco permit; and (4) direct Chambers to apply for a new permit.
On February 27, 1992, a non-evidentiary hearing was held before the Commission to determine whether it had cause to further investigate the allegations in the complaint. The Commission (1) found it lacked jurisdiction of Weems’ allegations of the issuance, modification, revocation or transfer of the Betco permit, and the complaint should be dismissed; and (2) held that it had subject matter jurisdiction and jurisdiction to all parties to the proceedings concerning Commission rules and regulations requiring a contract operator of a solid waste facility to hold a permit. It dismissed Weems’ allegation that the Commission violated rules and regulations because there were no rules applicable to prevent a contractual arrangement.
*272 On March 27, 1992, Weems, et al, filed a Complaint in the Chancery Court of Scott County asking the court to:
1. Permanently revoke the permit issued to Betco, now being illegally operated by Betco and Chambers Clearview, an affiliate of Chambers.
2. Reject Chambers’ application for transfer of the Betco permit, based on Chambers involvement in the illegal operation of the landfill since August of 1991.
3. Permanently enjoin the operation of the landfill by any of the defendants until such time as they may have secured a new permit under the provision of Section 17-17-229, Miss.Code Ann. (Supp.1991).
4. Permanently enjoin the Permit Board and the Commission of DEQ from issuing a permit for operation of the subject landfill to any party outside the provisions of Section 17-17-229, Miss.Code Ann. (Supp. 1991).
Only Betco, the Department, Chambers, and Chambers Clearview were named as defendants. Neither the Permit Board nor the Commission were named as parties.
On August 17, 1992, the court denied the defendants’ motion seeking dismissal of the complaint for lack of subject matter jurisdiction and standing. On September 11, 1992, the Defendants sought an interlocutory appeal to this Court on the chancellor’s denial of the motions to dismiss. The Court denied the interlocutory appeal on October 22, 1992. On October 21, 1992, Weems filed a response to the Commission’s request for summary judgment and requested summary judgment in its favor. The court, on November 6, 1992, held the action was not ripe for summary judgment proceedings, and Weems was allowed to amend the pleadings to join both the Commission and Permit Board. On January 20, 1993, the chancellor’s opinion on the Motions for Summary Judgment stated
the parties present no dispute regarding any material fact.... The only issues presented are the proper reading of statutes, rules and regulations of the administrative agency and propriety of the administrative agencies interpretation of those statutes, and the contract between Betco and Chambers Clearview and Chambers MS.”
Summary judgment was granted to Weems as to “whether or not a permit may be transferred from one entity to another in violation of the moratorium statute”. The chancellor remanded the action to the Commission and the Permit Board to determine if (1) a “de facto transfer” actually occurred, and if so, (2) what action should follow from either agency or both, and (3) the agencies should promulgate appropriate rules and regulations, as the enabling statutes allow or require concerning permit transfers outside the authority of the Permit Board.
The chancellor stated § 17-17-1 “established a procedure to be followed in the licensure, operation and regulation of solid waste disposal facilities” in Mississippi. In addition, § 17-17-27 gave the Mississippi Commission on Environmental Quality the right and obligation to
adopt such rules and regulations as may be needed to specify methodology and procedure to meet the requirements of the law, which shall include ... rules and regulations specifying the terms and conditions under which the Permit Board shall issue, modify, suspend, revoke or deny such permits as may be required by law.
The chancellor expected a determination by the administrative agencies based upon the statutes. The chancellor believed the contractual relationship between Betco and Chambers was interpreted:
to be a legal and acceptable arrangement under the Solid Waste Disposal Law of 1974, and applicable administrative rules and regulations, in that the administrative agency has determined that there can be no ‘transfer’ outside of the actions of the Permit Board. In other words, ‘It ain’t so until the Permit Board says it is so’, regardless of the facts!
The chancellor recognized that no federal or state law, or rule or regulation, existed to interpret the contractual relationship. The chancellor noted “great deference” is given to an administrative agency’s construction of its own rules, regulations and statutes. The chancellor stated the agency interprets the *273 statute it is to enforce, and is given “controlling weight” unless it is “manifestly contrary to the statute.”
The chancellor believed the term “transfer” was not interpreted, and the Commission “does not speak, nor set policy, through the letters of its Executive Director. It can only speak through its own official action.” Further, the chancellor believed the Commission disregarded the testimony of Charles Chisholm, Director of the Bureau of Pollution Control of the DEQ, when he stated “a contractual arrangement between somebody and a permit holder can be so comprehensive as to turn the facility over to this other party and be tantamount to a permit transfer.” Thus, the Commission refused to address the issue, and refused the plaintiffs a full eviden-tiary hearing. The chancellor believed the Commission ignored the
legislative purpose in enacting the moratorium, which was to maintain the status quo with respect to all then existing permits so as to allow the State to study, consider and implement a comprehensive state wide nonhazardous solid waste management plan. This meant that no permit holder should ‘transfer’, in fact or in law, his Permit to another entity, (emphasis by court)
The chancellor termed the Commission’s actions to be “arbitrary and capricious, unreasonable, unlawful, and not supported by substantial evidence.” Because the chancellor believed the Commission’s actions conflicted with the moratorium statute, he remanded the action to the administrative agencies to act “not inconsistent with this opinion.” Finally, the chancellor recognized that this Court has not granted authority to adopt rules and regulations for an administrative agency. Citing Mississippi Air and Water Pollution Control Permit Board v. Pets and Such Foods, Inc., 394 So.2d 1353 (Miss.1981); State for Use of Cochran v. Eakin and Aetna Casualty and Surety Company, 203 So.2d 587 (Miss.1967) The chancellor recognized the agencies are “better equipped, and possess the required expertise to consider and adopt ... rules and regulations.”
On January 28, 1993, the Scott County Non-hazardous Solid Waste Plan was approved by the Commission. The moratorium was lifted by operation of law. See Miss. Code Ann. § 17-17-59(1) (1972, as amended) Weems then filed a Motion to Alter or Amend Judgment or In the Alternative to Cite for Contempt requesting the chancellor to rescind the Commission’s approval of the Scott County Plan, modify summary judgment to prevent approval of the plan, and find the defendants in contempt. The defendants responded to the motion for contempt by requesting Rule 11 Sanctions. Motions by both parties were denied.
On June 12, 1993, the defendants filed a Motion and Joinder of Motion to Stay Final Judgment Pending Appeal. The chancellor denied and granted in part the motions to stay.

STANDARD OF REVIEW

In State Tax Com’n v. Earnest, 627 So.2d 313, 319 (Miss.1993), this Court stated that
[o]ur Constitution does not permit the judiciary of this state to retry de novo matters on appeal from administrative agencies. Our courts are not permitted to make administrative decisions and perform the functions of an administrative agency. Administrative agencies must perform the functions required of them by law. When an administrative agency has performed its function, and has made the determination and entered the order required of it, the parties may then appeal to the judicial tribunal designed to hear the appeal. The appeal is a limited one ... since the courts cannot enter the field of the administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (8) was beyond the power of the administrative agency to make, or (⅝) violated some statutory or constitutional right of the complaining party.
Id. at 319-320, citing Mississippi State Tax Commission v. Package Store, Inc., 208 So.2d 46, 48 (Miss.1968); State Tax Commission v. Vicksburg Terminal, 592 So.2d 959, *274 961 (Miss.1991) (quoting Mississippi State Tax Commission v. Mississippi-Alabama State Fair, 222 So.2d 664, 665 (Miss.1969) (emphasis added))
The Court has defined “arbitrary” and “capricious” as “open-texted and not susceptible of precise definition or mechanical application.” 627 So.2d at 320. In Dept. of Health v. S.W. Miss. Med. Ctr., 580 So.2d 1238 (Miss.1991) the Court stated
An act is arbitrary when it is done without adequately determining principle; not done according to reason or judgment, but depending upon the will alone, — absolute in power, tyrannical, despotic, non-rational,- — -implying either a lack of understanding of or a disregard for the fundamental nature of things.... An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.
Id. at 1240 quoting In Re Housing Authority of City of Salisbury, 235 N.C. 463, 468, 70 S.E.2d 500, 503 (1952) (see also Melody Manor Convalescent Center v. Mississippi State Department of Health, 546 So.2d 972, 974 (Miss.1989); Mississippi State Tax Commission v. Dyer Inv. Co., Inc., 507 So.2d 1287, 1289 (Miss.1987); State Board of Psychological Examiners v. Coxe, 355 So.2d 669, 671 (Miss.1978))
In addition, this Court has held it will not disturb on appeal the chancellor’s ruling unless “it is found to be against the overwhelming weight of the evidence or manifestly in error.” McNally v. McNally, 516 So.2d 499, 501 (Miss.1987) (citing Harrell v. Harrell, 231 So.2d 793 (Miss.1970); Tinnin v. First United Bank of Miss., 570 So.2d 1193, 1194 (Miss.1990)). If there is substantial evidence to support the chancellor’s findings, the Court will not disturb his conclusions. In re Estate of Harris, 539 So.2d 1040, 1043 (Miss.1989). The Court will not hesitate to reverse if the chancellor’s decision is “manifestly wrong, or that the court applied an erroneous legal standard.... ” Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993); citing Smith v. Smith, 607 So.2d 122, 126 (Miss.1992).

DISCUSSION

III. WHETHER THE CHANCELLOR HAD JURISDICTION OF WEEMS’ CAUSE OF ACTION WHEN WEEMS FAILED TO EXHAUST AND UTILIZE ADMINISTRATIVE REMEDIES, INCLUDING APPEAL.
The Commission argued the Permit Board had jurisdiction of the permit as defined by Miss.Code Ann. § 49-17-29(3)(a), and it could not become involved in Beteo and Chambers’ contractual relationship since it was not guided by applicable rules concerning the rights and duties of the contracted parties. The Commission argues that Weems was to comply with §§ 49-17-35 and 49-17-MI to seek a hearing. Since the order turned on the law and full evidentiary hearing was not necessary, thus Weems had 15 days to file an appeal. Instead, Weems filed an independent action. The chancellor believed there was a recognized exception to the administrative guidelines because Weems was in a “useless forum”. The Commission argues the chancellor disregarded the administrative process, and Weems’ claim before the chancery court was barred for failure to exhaust administrative remedies.
Weems argues section D(9) of the permit, the 1988 regulations, and the moratorium were violated. Section D(9) states
Transfer of permits. This permit may be transferred to a new owner or operator only after the new owner or operator has been notified in writing by the permittee of the requirements of the new permit and the acceptance by the Natural Resources Permit Board.
Weems argues Beteo and Chambers were caught with the “smoking gun” (the Landfill Service Agreement), and the chancellor believed the Commission either ignored or suppressed “the true factual situation.” The Commission delayed, kept the facts from the courts, and placed the plaintiffs in an administrative “black hole” until the moratorium and permit expired. Weems argues that nothing was litigated at the Commission hearing, and he was denied an evidentiary hearing. The Commission’s order never ad *275 dressed section D(9), nor did the Commission ever see the Landfill Service Agreement that illegally transferred the permit. Weems believes the Commission’s requests could take a decade.
The facts indicate that Weems had a non-evidentiary hearing before the Commission on February 27, 1992. The chancellor defined the hearing as a “probable cause type hearing”, the word “transfer” was not interpreted by the agency, and the whole process essentially refused the plaintiffs a full eviden-tiary hearing. The chancellor acknowledged the legislature enacted a moratorium on the “transfer” of existing permits unless there was an exception. The chancellor believed the Commission ignored the legislative enactment and it disregarded the testimony of Chisholm by refusing to consider whether a transfer of the permit occurred. In the chancellor’s opinion, the Commission acted in an arbitrary, capricious, unreasonable and unlawful manner without any evidentiary support for its actions.
THE MORATORIUM
The legislature enacted a moratorium that no permits be transferred, with exceptions noted in the act. The moratorium, provided by statute § 17-17-59(1) which went into effect April 2, 1990 reads in part:
and ending upon the approval date of a local nonhazardous solid waste management plan for the area within the approved plan on the processing of permit applications, the issuance of permits for new or expanded municipal solid waste facilities and the transfer of existing permits for the incineration, treatment, processing or disposal of municipal solid wastes. Except as otherwise provided in this section, the moratorium shall also apply to all applications for permits and transfers of permits for new or expanded municipal solid waste management facilities and the transfer of existing permits for incineration, treatment, processing or disposal facility pending before the permit board during the moratorium period.
The following dates provide significant importance following the enactment of the moratorium.
August 3, 1990, Betco and Chambers sign a sales contract concerning the landfill. August 10, 1990, an application for the transfer of Betco’s permit to Chambers was initiated.
January 8, 1991, Chambers is denied an exception to the moratorium from the permit board by a unanimous vote.
March 7, 1991, Chambers and Betco sign the Landfill Services Agreement which would transfer the permit to Chambers, and it initiates an amendment to the agreement of sale.
April 1, 1991, the moratorium is extended until July 1, 1992.
May 14, 1991, Chambers is granted an exception to the moratorium.
August 9,1991, Chambers reapplies for the permit transfer. Permit Board never approves nor rejects the application.
September 10,1991, Weems stipulates that the landfill is developed and operating while the permit board has not approved the transfer of Betco’s permit.
February 27, 1992, Pollution Control Director Chisolm states that a contractual arrangement can be tantamount to a permit transfer.
April 23, 1992, Scott County Chancery Court denies Chambers exception to the moratorium.
May 15, 1992, the moratorium was extended past July 1, 1992 with provisions to expire upon approval of the county’s plan for a solid landfill. See 17-17-59.
January 28, 1993 or February 5, 1993, moratorium expires with the approval of the Scott County Plan by the order of the Commission.
The chancellor ruled that the Permit Board lacked authority to grant the exception to the moratorium because the facility was not a new or expanded facility as stated in § 17-17-59(3), (4). Again, the chancellor noted “great deference given to administrative agency’s construction of its own rules and regulations, and the statutes under which it operates, and further, that an agency’s interpretation of the statute it is to enforce is given ‘controlling weight’ unless it *276 is ‘manifestly contrary to the statute’ The problem was that “transfer” was neither defined nor interpreted by the Commission, nor does the MCEQ speak or set policy through the letters of its Executive Director.
The Commission responded with the following when requested to address the issue of the “transfer” of Betco’s permit during the February 27,1992, “probable cause hearing”:
BETCO holds a valid permit, and the Commission has no duly adopted standards for intricate examination of the BET-CO/Chambers contract. Therefore, the Commission finds no basis for any determination that its current Rules and Regulations requiring permits for the operation of solid waste facilities have been violated.
The chancellor believed the Commission summarily brushed aside the issue and overlooked and totally disregarded the opinion of the Director of the Bureau of Pollution Control of the DEQ (Chisholm) who stated:
But my personal view is that as a practical matter, the answer to the question is yes, that a contractual arrangement between somebody and a permit holder can be so comprehensive as to turn the facility over to this other party and be tantamount to a permit transfer. The law contemplates that things called permit transfers must follow a certain specific procedure set out in the law.
The chancellor said that while the Commission totally disregarded this information, “this Court wholly agrees with his common sense approach.” Thus the Commission “(1) disregarded the testimony of its own expert; (2) refused the plaintiffs a full evidentiary hearing on the matter. It simply punted on first down.” In the final part of the chancellor’s opinion, he stated:
It is the intention of the Court to require that either the Commission or the Permit Board, or both, if allowed or directed by their respective enabling statutes, adopt standards for the examination of specific terms and conditions of a contractual or other relationship between a permit holder and any of its employees or contractors to determine, as a matter of fact, whether or not such agreements or other arrangements between the parties are so extensive in scope and coverage as to result, in effect, in a circumstance whereby a contractor or employee of a permit holder has so displaced the holder of the permit that the contractor or employee must obtain a permit in their or its own right.
The Commission argues the Mississippi case on exhaustion of administrative remedies is Hood v. Mississippi Department of Wildlife Conservation, 571 So.2d 263 (Miss.1990). Hood was a state service employee who was terminated for vote fraud. He appealed to the Employee Appeals Board and his termination was affirmed. Hood did not appeal to the Circuit Court. The Court stated that
[b]ecause every claim Hood asserts was available to him before the Employee Appeals Board — and before the Circuit Court thereafter, had he chosen that route, we hold Hood’s remedy at law plain, speedy, adequate and complete. Because that remedy has been exhausted, Hood’s claim is barred under elementary notions of res judicata.
Id. at 268. The Commission’s argument that Hood is the case law on exhaustion of administrative remedies is unconvincing. Weems was not afforded a plain, speedy, adequate and complete remedy. This case has been in and out of the courts for three years or more. The facts are unparalleled.
The case of Mississippi Air & Water Pollution Control Permit Board v. Pets & Such Foods, Inc., 394 So.2d 1353 (Miss.1981) is more directly on point as it supports Weems’ position based upon these facts. Pets & Such sued the Mississippi Air and Water Pollution Control Permit Board when its operating license was revoked. Pets & Such failed to eliminate odors emanating from its plant. Pets & Such followed the procedure of § 49-17-29 to receive a formal hearing. The hearing never concluded because Pets & Such received a temporary injunction from the chancery court which stopped the administrative proceeding. Likewise, the Permit Board argued that Pets & Such did not exhaust the administrative remedies. The Court held “[i]n our opinion this doctrine is not applicable to a case such *277 as the instant one where no definite standards have been set.” Id. at 1355. The Court considered Campbell Sixty-Six Express v. J & G Express, 244 Miss. 427, 440, 141 So.2d 720, 726 (1962) where it held:
We do not think this is a proper case for applying the doctrines of exhaustion of administrative remedies, and of primary jurisdiction. Under the averments of the bill, the complainants’ remedy before the commission is not adequate. Where no adequate administrative remedy is provided, the exhaustion doctrine is not applicable. Moreover, there is reasonable doubt as to the availability and adequacy of the administrative remedy.
Id. The Court held the Mississippi Air and Water Pollution Control Commission “failed to set definable, objective standards with respect to the emission of odors” and upheld the chancellor’s ruling. Id. Likewise, the Commission and Permit Board in the ease sub judice did not articulate nor define the term “transfer” of the permit. They admitted there were no rules and regulations available to adjudicate the issue. The chancellor was correct to send the case back to the Permit Board and Commission to determine the correct rules and regulations for the agencies to follow. The Commission’s arguments are without merit.
Other jurisdictions have considered and ruled upon the consideration of exhausting administrative remedies. In City of Lake Station v. State ex rel. Moore Real Est., 558 N.E.2d 824 (Ind.1990), Moore Real Estate filed a complaint against the city building commission for a mandate and damages allegedly resulting from the commission’s failure to decide whether to grant a building permit. The Court noted that Moore’s application to build a single dwelling housing was pending for about a year before the trial court finally heard the motion on appeal. One issue at trial was whether the trial court erred in denying the motion to dismiss because Moore failed to exhaust administrative remedies before filing the action in trial court. The Court noted that the record did not reveal any action taken by the Building Commission on Moore’s application in that it did not grant, deny or expressly decided not to decide. It appeared the application to build the single dwelling unit had been pending for almost a year when the trial court heard the motion from which the appeal arose. The Court determined that:
there had never been a “ruling, action or determination” which Moore could appeal to the Building Department Review Board. The doctrine of exhaustion places responsibility for administrative decisions with administrative bodies, where they belong. When a governmental entity will not act, resort to the courts is appropriate. The building commission had not acted after nearly a year: its failure to act was apparently not appealable to the Building Department Review Board.
Thus, Moore’s lawsuit was not barred for failure to exhaust administrative remedies.
In Ellingson & Associates, Inc., et al., v. Keefe, 410 N.W.2d 857 (Minn.App.1987), the Court stated that “[wjhere the concerned administrative bodies have unequivocally committed themselves to a determination of the issue challenged, the doctrine of exhaustion of administrative remedies does not require that futile attempts at administrative relief be taken before seeking a judicial determination.” Id. at 860 (citations omitted).
In an Oklahoma case, Lone Star Helicopters, Inc., v. State of Oklahoma, et al., 800 P.2d 235 (Okla1990), the Court stated “[e]x-haustion of an administrative remedy is generally a prerequisite for resort to the courts, but the doctrine will not bar a district court action that bypasses the agency’s own rule-prescribed mode for processing a complaint if the administrative remedy is unavailable, ineffective or would be futile to pursue.” Id. at 237 citing 4 Davis, Administrative Law Treatise § 26:11 at 464 (2d ed. 1983).
Davis’s treatise provides a multitude of guidance on this issue. It states:
All cases in which administrative jurisdiction is challenged without exhausting administrative remedies are not alike; such cases probably should go both ways. When pursuing the administrative remedy will cause irreparable injury and the lack of agency jurisdiction clearly appears from considerations that are not within the agency’s specialized understanding, ex *278 haustion should not be required. But when the administrative proceeding involves no unusual expense and when the agency’s specialized understanding may contribute to a proper determination, a requirement of exhaustion may be desirable. Nearly all the difficult cases lie between these extremes, and what is needed is a guide for deciding such cases.
Davis, Administrative Law Treatise, 2d, Vol. 4, § 26:5 p. 432 (1983) Davis’ treatise states that “[o]ne need not exhaust administrative remedies that are inadequate. Whenever exhaustion will be futile it is not required.” Administrative delay will constitute dispensing with exhaustion of administrative remedies. Id. at 464, § 26:11.
The treatise considers many factors both pro and con which aid a reviewing court in determining whether the administrative remedy should be followed:
When the agency is causing or threatening to cause irreparable injury through clearly illegal action, exhaustion is unlikely to be required, and when a disputed question seems to be within the agency’s specialization the agency can provide satisfactory relief, exhaustion is likely to be required. When a court deems exhaustion desirable, it may say that it lacks jurisdiction to interfere, but when the question is a close one, a court may acknowledge that the result depends more on judicial discretion than on law.
Yet the major factors that affect an exhaustion decision may be easily identified. Pulling away from requirement of exhaustion are combinations of such factors as irreparable injury to a party from pursuing the administrative remedy, clear absence of agency jurisdiction, clear illegality of the agency’s position, a dispositive question of law peculiarly within judicial competence, the futility of exhaustion, and expense and awkwardness of the administrative proceeding as compared with inexpensive and efficient judicial disposition of the controversy.
Pulling toward requirement of exhaustion are combinations of such factors as need for factual development, importance of reflecting agency’s expertise or policy preferences in the final result, probability that the agency will satisfactorily resolve the controversy without judicial review, protection of agency processes from impairment by avoidable interruption, conservation of judicial energy by avoiding piecemeal or interlocutory review, and providing the agency opportunity to correct its own errors.
Davis, § 26:1, at 413-414. Davis suggests three methods in which the courts handle exhaustion problems: (1) They decide the merits first and thereby render their later consideration of the exhaustion question meaningless. (2) They silently assume that they must decide the exhaustion before they consider the merits, and they act on that assumption. (3) They allow their decision of the exhaustion question to be influenced by their preliminary impression of the merits, usually concealing such influence but occasionally acknowledging it. Davis notes that most courts follow ehoice/method (2) more than the others, followed by (1).
EXHAUSTION OF ADMINISTRATIVE REMEDIES
While arguing that Weems did not pursue his administrative remedies per § 49-17-41 because a direct action was filed, the Commission et al. also suggest that Weems asked for a hearing and this hearing could be characterized as a evidentiary hearing since the Commission would determine whether a evi-dentiary hearing was necessary. When Ms. Buttross was asked whether before filing the second direct action, did Weems request a full evidentiary hearing, she responded the petition filed for a full evidentiary but it cited incorrect statutes but the Commission took it as a request for an evidentiary hearing. Yet, incredibly, the Commission decided that there was no evidence to take and there was nothing to hold a hearing on since it had neither rules nor regulations with which to review the contractual relationship between private parties, i.e. Betco and Chambers. Therefore, no evidentiary hearing occurred. If this case were to end at this point, then the Commission would be correct that Weems failed to exhaust his administrative remedies and the chancellor’s decision would *279 have to be overruled, the stopping point. However, this is not
When asked whether the Statute requires and mandates that the Commission formulate rules and policies to govern the very type situations which it apparently doesn’t have rules for, Buttross responded that the Commission promulgates rules and regulations dealing with the methodology and maintenance of the facility as it deems needed. It does not mandate that it pass regulations specifically on transfers, but the Commission has rules that a transfer may only occur with permit board approval. Further, the permit board by statute has exclusive jurisdiction on permits — the Commission lacked authority to infer from private contracts that the transfer had occurred because it did not have rules and regulations that prohibited these situations. In other words, this was nothing but a clever little game of administrative agency volley ball.
The chancellor ruled the Commission had not complied with § 17-17-27 which states the
commission shall adopt such rules and regulations as may be needed to specify methodology and procedures to meet the requirements of this chapter, which shall include at a minimum:
(d) Rules and regulations specifying the terms and conditions under which the permit board shall issue, modify, suspend, revoke or deny such permits as may be required by this chapter. Such rules and regulations shall include, and not by way of limitation, specific authority for the permit board to consider the financial capability and performance history of an application; (emphasis added)
However, a more stringent analysis of the statutes illustrates the interconnectedness of the agency. In United Cement v. Safe Air For The Env., 558 So.2d 840, 843, FN 1 (Miss.1990), this Court cited § 49-17-7 as follows:
(1) The Mississippi Commission on Natural Resources shall be the Mississippi Air and Water Pollution Control Commission, and shall exercise the duties and responsibilities of the Mississippi Air and Water Pollution Control Commission through the bureau of Pollution control of the Mississippi Department of Natural Resources, insofar as practicable under the provisions of Chapter 2 of Title 49, Mississippi Code of 1972.
(2) The words “Mississippi Air and Water Pollution Control Commission” wherever they may appear in the laws of the State of Mississippi shall be construed to mean the Mississippi Commission of Natural Resources.
The Court stated further in the footnote that the “Bureau of Pollution Control, the Permit Board, and the Permit Board’s hearing officer are all a part of the same administrative agency, the Mississippi Department and Commission on Natural Resources. See also Miss.Code Ann. §§ 49-17-13, 49-17-28 (Supp.1989).” Id. (emphasis added).
The statutes define “Commission” as meaning the Mississippi Commission on Environmental Quality. § 17-17-3(g). Section 49-2-6 states “[t]he Mississippi Commission on Environmental Quality shall be the Mississippi Commission on Natural Resources with the exception of the Bureau of Parks and Recreation, ... and wherever the term “Mississippi Commission on Natural Resources” appears in any law the same shall mean the Mississippi Commission on Environmental Quality.” Section 49-2-7 states that “wherever the term ‘Mississippi Department of Natural Resources’ appears in any law the same shall mean the Department of Environmental Quality.”
Section 49-2-5 created the Mississippi Commission on Environmental Quality; § 49-2-9 grants the Commission powers and duties, the least of which is “[t]o enter into, and to authorize the executive director to execute with the approval of the commission, contracts, grants and cooperative agreements with any federal or state agency or subdivision thereof, or any public or private institution located inside or outside the State of Mississippi_” Section 49-2-13 states the powers and duties of the executive director of the Commission, in particular, sub paragraph (j) which states:
To issue, modify or revoke any and all orders under authority granted by the *280 commission which include, but are not limited to whose which ... (iv) require compliance with the conditions of any permit issued by the Permit Board created in Section 49-17-28 and all regulations of the commission ...
The statutes clearly defines and delineates the power structure among these players. Section 49-17-1 clarifies sections 49-17-1 to 49-17-43 as “Mississippi Air and Water Pollution Control Law.” Section 49-17-17 states the powers and duties of the Commission, which gives the Commission the authority to'“exercise all incidental powers necessary to carry out the purposes of sections 49-17-1 through 49-17-43 and sections 17-17-1 through 17-17-47_” Section 49-17-28 created the permit board “for the purpose of issuing, modifying, revoking and denying, under such conditions and limitations as it may prescribe, ... and for the purpose of issuing, modifying, revoking or denying, under such terms and conditions specified by the com-mission_” The section continues to define and list its composition of members.
Without a doubt the permit board is under the guidance and control of the Commission. Section 49-17-29(3)(a), (b) provides the responsibility and authority of the permit board as it relates to solid waste and hazardous waste permits.
(a) The permit board created by section 49-17-28 shall be the exclusive administrative body to make decisions on permit issuance, denial, modification or revocation of permits required hereinabove, and permits required under the Solid Wastes Disposal Law of 1974 (sections 17-17-1 through 17-17-47). The decisions of the permit board shall be recorded in minutes of the permit board and shall be kept separate and apart from the minutes of the full commission. The decision of the permit board to issue, deny, modify or revoke permits shall not be construed to be an order or other action of the full commission.
(b) The executive director of the commission shall also be the executive director of the permit board and shall have available to him, as executive director of the permit board, all resources and personnel otherwise available to him as executive director of the commission, (emphasis added)
The importance of the Commission’s ruling now becomes apparent. On the one hand, the Commission determined it lacked jurisdiction of Weems’ allegations of the issuance, modification, revocation or transfer of the Betco permit, and thereby dismissed the complaint. On the other hand, the Commission held it had subject matter jurisdiction and jurisdiction to all parties concerning Commission rules and regulations requiring a contract operator of the solid waste facility to hold a permit. These two determinations are totally inconsistent in view of the process in which the statute determines the hierarchy and method in which the Commission and permit board are to govern. J.I. Palmer is/was executive director of the Commission. By statute, he is also the executive director of the permit board. The record reveals correspondence between him and Betco’s president Bobby J. Thomas concerning the proposed contract between Betco and Chambers, and the record also illustrates Palmer’s communication with William S. Weems regarding the permit.
Having outlined and considered the aforementioned statutes and facts concerning this case, it is apparent the Commission has failed at least 2 if not 3 of the four-prong test as stated in State Tax Com’n v. Earnest, 627 So.2d 313, 319-320 (Miss.1993). In adjudicating this appeal this Court must determine whether or not the order of the administrative agency was (1) supported by substantial evidence, (2) arbitrary or capricious, (3) beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party.
A problem in this analysis is determining what constitutes substantial evidence, arbitrary and capricious actions. The reviewing court is “only to determine whether substantial evidence supports the agency’s decision and whether the agency exercised its discretion reasonably and with due consideration.” 2 Am.Jur.2d Administrative Law § 537 Substantial Evidence Standard (1994). Substantial evidence is “more than a mere scintilla of evidence” or “something less than a preponderance of the evidence but more than a *281 scintilla or glimmer.” Id. See also Harris v. Mississippi Real Estate Com’n., 500 So.2d 958, 962 (Miss.1986); Mississippi Real Estate Comm. v. Ryan, 248 So.2d 790 (Miss.1971) (established meaning of substantial evidence as more than a scintilla, it must do more than create a suspicion especially where the proof must show bad faith). “The reviewing court is concerned only with the reasonableness of the administrative order, not its correctness.” Id. § 541. The question then is “whether substantial evidence supports the findings made by the agency.” Id. p. 530.
The statutes show more than a scintilla of substantial evidence that the Commission was capable of making rules and regulations constituting or defining the “transfer” of permits. The Commission had vested authority to act pursuant to Weems’ request on defining the transfer of the Beteo permit. The Permit Board does have granted authority in the issuance, modification of permits etc. But, it is not a totally independent agency as United Cement clearly states, and the statutes determine the extent of authority each agency has and how it interrelates with the other.
Second, and more importantly, the Commission’s actions, as stated in its ruling, indicate an arbitrary and capricious reaction. An administrative act is arbitrary and capricious if the agency “entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.” 2 AmJur2d § 530 at 519 (1994). In addition, the “failure of an agency to abide by its rules is per se arbitrary and capricious as is the failure of an administrative body to conform to prior procedure without adequate explanation for the change.” Id. By not considering or acting within the confines of the statute, Weems’ was in a “useless forum” which would dictate the outcome of a full evidentiary hearing. The chancellor was correct in this decision as well.
This Court has not been quick to determine administrative agencies acting arbitrarily and capriciously. However, in McGowan v. Mississippi State Oil & Gas Board, 604 So.2d 312 (Miss.1992) the Court determined that the Board’s actions were arbitrary and capricious. In that case, McGowan, an independent oilman, had obtained a provisional permit from the Mississippi State Oil and Gas Board to operate his wells without a “packer”. The packer would dispose of salt water from the wells. Approximately two years later McGowan applied for a new permit without packers by citing his record of the 1984 exceptions. While this action was pending McGowan filed new applications for permits without packers. The Board requested McGowan to show 'cause why the permits without the packers should not be revoked. McGowan showed extensive proof regarding productivity and efficiency and safety of the packerless design. The end result was McGowan was denied his permit request.
McGowan argued the Board’s actions were arbitrary and capricious. As in the case at bar, the McGowan Court strongly considered the legislative enactments regarding the balancing of public and private interest in the elimination of waste from oil and gas wells. The Court considered the empowerment of the Board by statute to make rules and regulations to prevent wastes. McGowan, 604 So.2d at 322 citing Miss.Code Ann. § 53-1—3(l)(1) (1972 & Supp.1991). The Court only knew that the Board rejected McGowan’s paekerless wells but it was not sure why because there was substantial testimony in the record to show that packerless wells prevent waste. The Court lacked information regarding the Board’s actions and as such held those actions as arbitrary and capricious. Id.
In Penick v. Com’n on Natural Resources, 533 So.2d 179 (Miss.1988), the owner of 16th section land constructed and began operating a creosoting plant, and he built holding ponds for the runoff of residue. The owner then sold out to another party who owned and operated the business until the appellant took over the business. The appellant leased the business with a purchase option which was never exercised. Six months later the EPA implemented regulations which the *282 State adopted. The appellant was then informed by the Bureau on Natural Resources that in order to continue operations he would need to obtain a permit and have signatures of the owner and operator of the plant. The owner refused to sign. This Court stated “[flailure to have a permit is the cause of the real problem here ... if appellant doesn’t have a permit he cannot operate, and if he cannot operate the regulations require him to clean up his toxic pond.” Id. at 180.
The obvious issue in Penick was whether the Bureau of Natural Resources’ actions were arbitrary, capricious and not supported by substantial evidence in holding that the operations of the plant would cease until the permit was obtained. The Court affirmed for the Commission holding that the statute regarding the regulation of pollution had not been complied with until the application of the permit was signed by both parties. Thus, the Bureau had no choice but to close the plant. Its actions were not arbitrary and capricious.
CONCLUSION
The facts in this ease and particularly the Commission’s Order, show the Commission acted arbitrarily and capriciously. The Commission had no rules and regulations regarding the transfer of permits. The statutes delegated the authority appropriately enough that the Commission merely had only to enact such rules and regulations. The questions were placed before its directors to determine what actually constitutes a transfer of permits. The deciding factor in this ease is that the Order propounded by the Commission was not reasonable when it decided that it did not have jurisdiction pertaining to the issuance, modification, revocation, or transfer of the Betco permit. Yet, the Commission decided it did have jurisdiction of the subject matter and all parties concerning Commission rules and regulations. Weems’ request was not beyond the power of the agency to make. The statute gave the Commission authority to act by defining a “transfer” and further, providing rules and regulations regarding the transfer of permits.
The Commission failed to demonstrate to this Court that it was not equipped to adopt rules and regulations that would have ended this litigation long ago. There is a caveat in this case that must be addressed as it concerns both law and important public policy. In the complaint filed March 27, 1992, Weems alleged that Betco was “financially unable to operate the landfill and is financially unable to meet the financial requirements imposed by DEQ to operate the landfill.” Betco’s answer stated that “it has been financially unable to develop and operate the Clearview Environmental Landfill Facility” since the issuance of the permit. This poses an important question: Should some accident or environmental problem occur, regardless whether Chambers was negligent or not, who then, would an injured party look to for redress of the injury? It was stated repeatedly that the Commission holds Betco primarily liable on the permit. However, a strong argument can be made that Betco, for all intent and purposes, is judgment proof.
The Mississippi Department owed a much higher duty to the citizens of Scott County than was exercised in this ease. There was no recognition of their serious obligation to insure that the best qualified companies were awarded a permit.
First, one must ask how could the Department award a contract to Betco, a company which did not have the financial resources to construct an adequate facility. An explanation is in order from the Department for this apparent dereliction.
Second, the Department was clearly wrong in thinking it had no responsibility if Betco chose to have someone else construct and operate the landfill. According to the Executive Director, the Department would look solely to Betco, a company almost bankrupt, and not the Chambers, for compliance. For an enterprise of this nature, the Department showed very little concern for the citizens and property owners who live in the vicinity of the proposed landfill. If the Department of Environmental Quality has any obligation at all, it has a duty to take every lawful step it can to insure the best possible entity is chosen to construct and operate a landfill. The importance of this public policy issue is convincing in view of the many counties and municipalities in Mississippi which hold the *283 permits to operate landfills and yet the actual operation of such landfill is conducted by an independent company by contract between the parties. This begs the obvious: Additional rules and regulations above and beyond a simple definition of “transfer” are necessary concerning this important public policy issue. We hold that § 17-17-1 established the procedure for operation and regulation of waste facilities and § 17-17-27 gave the Commission the authority and obligation to develop rules and regulations as needed to specify methodology and procedure to meet the requirements of the law. Neither federal law, state law or existing rules and regulations of the Commission interpret the contractual relationship at issue, as the term “transfer” is only defined and not interpreted concerning permit transfers outside the authority of the Permit Board. It is equally clear that the Commission’s actions were arbitrary and capricious and conflicted with the moratorium statute. The chancellor was correct in requiring the Commission to develop additional rules and regulations governing transfers and we must affirm.
JUDGMENT IS AFFIRMED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., SULLIVAN, PITTMAN, McRAE and ROBERTS, JJ., concur.
BANKS, J., not participating.